COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 


 
 
  
 HENRY RAMOS,
  
                            
 Appellant,
  
 v.
  
  
 THE STATE OF TEXAS,
  
                            
 Appellee.
 
 
  
   '
     
   '
     
   '
     
   '
     
   '
     
  '
 
  
 
 
  
  
                   No. 08-10-00338-CR
  
 Appeal from the
  
 Criminal
 District Court Number One
  
 of El
 Paso County, Texas 
  
 (TC# 20080D05827) 
  
 
 


                                                                  O
P I N I O N

Henry Ramos
(“Appellant”) appeals his convictions for aggravated kidnapping, a first-degree
felony, and sexual assault, a second-degree felony.  Appellant brings three issues:  (1) that the trial court erred in allowing
extraneous evidence of another kidnapping and sexual assault; (2) error in
failing to include Appellant’s lesser-included-offense instruction of assault;
and (3) error in refusing to instruct on the mitigation defense of leaving the
victim in a safe place.  For the reasons
that follow, we affirm.

PROCEDURAL BACKGROUND

            Appellant was
indicted on one count of aggravated kidnapping and one count of sexual assault and
entered a plea of not guilty on October 25, 2010.  The jury found Appellant guilty of both
charges following a four-day trial.  The
jury assessed his punishment at 30 years confinement for aggravated kidnapping
and 20 years for sexual assault.  The trial
court imposed sentence in accordance with the verdict and ordered the sentences
to run concurrently.  Appellant timely
appealed.

FACTUAL
BACKGROUND








            On
the night of August 14, 2007, Zarya Mendoza, the complainant (“Zarya”), met
with friends at the Black Market Bar in the Cincinnati District in El Paso.  Zarya also invited Appellant, a friend and
former neighbor she had previously dated in 2005.  Zarya testified that she had lunch with
Appellant and visited with him at his house earlier in the day but that there
had been no romance or physical intimacy between them and that they were not
dating in August of 2007.

            During
the course of the evening, Appellant became angry at Zarya for not paying more
attention to him and began yelling at her and making a scene.  Zarya, embarrassed by these actions, left the
Black Market with one of her female friends and Appellant, who followed them,
and they all went to the O2 lounge, where Zarya ran into her ex-boyfriend (now
fiancé) Ivan.  When Appellant, who was
fairly drunk at that point, saw Zarya and Ivan speaking, he became “pretty
angry and violent,” started shouting, and grabbed Zarya by both arms and pulled
her aside.  Zarya decided to leave and
Appellant left with her.  Zarya stopped
at a taco stand because Appellant was very drunk at that point, and helped
Appellant walk as she continued to walk towards her own car.  She refused to drive Appellant home when he
asked, saying she was upset and afraid to drive with him.  Appellant persisted in trying to make Zarya
feel guilty about not driving him home, which Zarya felt was an attempt to
manipulate her into getting into the same car with Appellant.  After her refusal, Appellant began shouting
at her, in addition to shouting at other people looking at them, at which point
Zarya dropped the tacos she had purchased, got into her car and drove away.

            Appellant
made numerous phone calls (approximately fifteen) to Zarya while she was
driving home.  Zarya answered one of
these calls and Appellant asked her where she was, told her that they needed to
talk, said that he was sorry, and that he wanted to talk to her in person.  Zarya, feeling tired and afraid, told
Appellant that she was going to a friend’s house, hoping that he would not
think she was at her home.

            When
Zarya pulled into the driveway of her house and opened her car door, Appellant
came up from behind her, called her a liar, grabbed her around her neck in a
choke-hold, and dragged her out of her car and towards his truck, which was
parked in a dark area down the street.  Zarya
pressed the panic button on her car keys twice to no effect before Appellant
grabbed them out of her hand.  She
continued struggling, falling several times, and at one point, Appellant
stopped and confronted her about Ivan, saying she should call Ivan for
help.  Appellant then forced Zarya into
his truck and drove off, holding her by the neck and pinning her head against
the passenger-side window.  Appellant
drove until he reached an undeveloped desert area at the end of Redd Road where
construction crews had just started leveling the ground for new
construction.  At this point, Zarya
believed she was going to be left to die.

            Appellant
told Zarya she was a bitch and a whore, that he was “just going to fuck her and
get it over with,” and that he was not worried about getting in trouble because
his parents had money.  Appellant then
reached between her legs and ripped the crotch of her shorts open and, as she
was not wearing any underwear, she was completely exposed.  Zarya testified that after Appellant ripped
her shorts he penetrated her vagina with his hand.  Appellant then got out of the truck and
pulled Zarya across the bench seat of the truck where he began hitting her,
punching her at least once in the head. 
Appellant pulled her out of the truck, causing her to fall on the
ground.  Appellant then tried taking off
her blouse, which ended up covering her face so that she could not see.  After knocking her down repeatedly, Zarya was
forced to pull her blouse off so that she could see.[1]

            Appellant
placed Zarya onto the bed of his truck, forced her legs apart, and again
penetrated her vagina with his hand. 
Appellant unzipped his pants and began fondling himself, then pulled
Zarya out of the truck bed, causing her to fall on the ground.  While she was laying on the ground, Appellant
began fondling himself again and Zarya ran away and hid in a darker area of the
desert, behind a mound of dirt, until Appellant left.

            After
Appellant left, Zarya ran towards the nearest residential area, wearing nothing
but “shorts that were now basically a skirt.”  She began ringing the doorbells of houses that
she thought might be occupied while trying to remain hidden from Appellant, who
she saw driving up and down the streets of the neighborhood.  At trial, Paul Rosales testified that after
he was woken by the sound of his doorbell, he saw, through the front door
glass, a young girl (identified as Zarya) standing outside frantically waving
her arms.  She gave him her name and
address, told him that she was naked, that she thought she had been or almost
had been raped, and asked if he could toss her a shirt from his balcony.  Rosales ran to get a shirt while his wife
called 911, but when he returned, Zarya was gone.  Zarya testified that when Rosales responded
to the doorbell that she yelled her name and her parent’s phone number through
the closed door, told him that she had been raped, and asked that he call the
police.  She further testified that while
she waited, she began worrying what her parents would think about what happened
and began debating whether to get clothes from a friend and return home without
telling her parents what happened.  Zarya
covered herself with a piece of carpet she found and left to walk home.  Though she saw several police cars canvassing
the area, she felt conflicted about alerting them to her presence.

            While
on her way home, Zarya stopped and, in order to hide and rest, got into a car
that belonged to a friend and that Zarya knew would be unlocked.  Using a beach towel she found in the car to
cover herself, she continued home.  As
she got closer to home she was forced to hide and take a long detour because
she saw Appellant’s truck parked on the road near her home.  When she arrived home the police were already
there and Zarya gave a statement and was examined for evidence.

            In
the meantime, Zarya’s father, Hector Mendoza, was awoken by Zarya’s mother who
heard Zarya’s car alarm going off.  Looking
out the window, Hector saw Zarya’s car in the driveway and assumed she was
still inside, however when she did not come inside the house he went out to
check on her.  When he saw that Zarya was
not in the car, but that her purse and cell phone were, he became worried and
went back into the house where he called one of her friends to try and locate
her.  As Hector looked out of the window
again towards the car, he noticed that the door was wide open, which was not
how he had left it.  Hector went outside,
thinking that Zarya had come home, but instead found Appellant rummaging
through the car.  Hector asked Appellant
what he was doing at which point Appellant charged at Hector and, following a
struggle, Hector restrained Appellant on the ground until the police arrived.

            After
a police officer arrived at the house and separated Hector and Appellant, the officer
handcuffed Appellant and when the officer reached into Appellant’s back pocket
to retrieve his identification (with Appellant’s permission) the officer found
Zarya’s identification in Appellant’s pocket as well.  While the officer was waiting for the crime-scene
unit to arrive to process Zarya’s car in relation to the burglary, Zarya
arrived on foot, wearing a towel.

            At
trial, the court considered the State’s intent to introduce extraneous
offenses, including an unadjudicated extraneous offense which occurred in 2008.  After determining that two of the events
would be highly prejudicial, the court allowed the State to introduce only the
2008 offense for the “limited purpose of intent.”  The court gave a limiting instruction to the
jury prior to the testimony about the 2008 offense.

Testimony about
the 2008 offense was presented by Macee Robinet (“Macee”) regarding a
kidnapping and sexual assault committed by Appellant against Macee.  Macee testified that on August 20, 2008,
Appellant, who was angry with her for ignoring his phone calls, came to her
house.  When she told Appellant that she
no longer wanted to be in a relationship with him, he grabbed her by her arm,
took her outside, and forced her into his car. 
While in the car, Appellant grabbed her face hard enough to cause
bruising and slapped her.  Appellant
ultimately drove them to his house while telling Macee she was a “shitty
girlfriend” who was probably cheating on him. 
When they arrived at his house, he hid all the phones in the house, took
her to his bedroom, threw her on the bed, and told her he was going to “fuck [her]
like the slut that [she] was.”  Appellant
then ripped off her underwear and penetrated her vagina with his fingers.  Macee testified that she was kicking
Appellant hard enough so that he could not penetrate her with his penis and
that at that point he “snapped out of it.” 
Appellant told her they could no longer be in a relationship anymore
because of what he had done to her.  Because
she was in shock and still loved Appellant, Macee accompanied him outside to
share a cigarette and told him that everything would be okay.

DISCUSSION

Appellant presents
three issues, seeking to have this Court sustain his points of error, reverse
the judgment of the trial court, and render a judgment of acquittal or remand
the case for a new trial or new punishment trial.

I.                  
Error
in allowing extraneous evidence

Appellant’s first
issue asserts that the trial court erred by allowing evidence of the 2008
kidnap and sexual assault of Macee Robinet during the guilt-innocence phase of
the trial, because such evidence is inadmissible extraneous-offense evidence
under Rule 404(b) and was unduly prejudicial under Rule 403 of the Texas Rules
of Evidence.

The general rule
is that the defendant is to be tried only for the offense charged and not for
any other crimes or for being a criminal generally.  Segundo
v. State, 270 S.W.3d 79, 87 (Tex.Crim.App. 2008).  Evidence of other wrongful acts is not
admissible to prove the character of the person to establish that he acted
accordingly regarding the alleged offense. 
Tex.R.Evid. 404(b); Powell v. State, 63 S.W.3d 435, 438
(Tex.Crim.App. 2001).  Evidence of
extraneous acts of misconduct may be admissible if (1) the uncharged act is
relevant to a material issue in the case, and (2) the probative value of that
evidence is not significantly outweighed by its prejudicial effect.[2]
 Segundo,
270 S.W.3d at 87; Craft v. State,
08-10-00107-CR, 2012 WL 112527, *5 (Tex.App.--El Paso Jan. 11 2012, no pet. h.)(not
designated for publication)(same).  Evidence
of extraneous offenses may be admitted to prove motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident. Tex.R.Evid. 404(b); Craft, 2012 WL 112527, *5.  Rebuttal of a defensive theory is also one of
the permissible purposes for which relevant evidence may be admitted under Rule
404(b).  Moses v. State, 105 S.W.3d 622, 626 (Tex.Crim.App. 2003).  This exception includes defenses based on a
claim of fabrication, retaliation, or lack of opportunity.  See Bass
v. State, 270 S.W.3d 557, 563 (Tex.Crim.App. 2008)(extraneous-offense evidence
admissible for the noncharacter-conformity purpose of rebutting defendant’s
defensive theory that complainant fabricated allegations against him).

In determining
admissibility of extraneous offenses, the trial court must first determine
whether the evidence is relevant for a purpose other than to show conformity of
conduct.  Montgomery v. State, 810 S.W.2d 372, 390 (Tex.Crim.App. 1991)(opinion
on reh’g); Tex.R.Evid.
404(b).  After determining relevance, the
court must then assure itself that the probative value of the evidence is not
substantially outweighed by its prejudicial effect.  Crank
v. State, 761 S.W.2d 328, 342 & n.5 (Tex.Crim.App.), cert. denied, 493 U.S. 874, 110 S.Ct.
209, 107 L.Ed.2d 162 (1988); Tex.R.
Evid. 403.  We review the trial
court’s admission of extraneous offense evidence under Rule 404(b) or over a
Rule 403 objection for an abuse of discretion.  See De
La Paz v. State, 279 S.W.3d 336, 343 (Tex.Crim.App. 2009).  A trial court abuses its discretion only when
its decision lies outside “the ‘zone of reasonable disagreement.’”  Id.
at 343-44.

As noted above,
Rule 404(b) allows for admission of extraneous offenses for the purposes of
rebutting a defensive theory of fabrication. 
See Bass, 270 S.W.3d at 563; Theragood
v. State, 08-10-00013-CR, 2011 WL 3848840, *7 (Tex.App.--El Paso Aug. 31,
2011, no pet.)(not designated for publication). 
A defense opening statement opens the door to the admission of
extraneous offense testimony to rebut the defensive theory presented in the
defense opening statement.  Bass, 270 S.W.3d at 563.

Appellant argues
that he did not make “intent” an issue and that the trial court erred in
allowing the extraneous offense testimony because it was not relevant and, even
if it was relevant, its prejudicial effect outweighed its probative value.  Appellant argues that because “the complainant
testified that she either voluntarily went into the truck or was forced into
the truck, taken to a construction site about a mile from her house, assaulted
and penetrated against her will” that the element of intent was “readily
inferred from uncontested direct evidence.”

The record is
clear that Appellant’s defensive theory, which commenced in the opening
statement, was that Zarya voluntarily got into his truck and engaged in some
form of consensual sexual activity and later fabricated the sexual assault and
kidnapping because she was “obsessed” with him and angry that he kissed another
woman.  Counsel for Appellant
cross-examined Zarya on the nature of her relationship with Appellant and
whether it was sexual; whether she had anger issues; whether she was “obsessed”
with Appellant; whether she had seen Appellant kissing another woman; the
extent of her injuries and whether they were consistent with her accounting of
events; whether her sexual assault examination reflected injuries to her vaginal
area; why she appeared to have no injury to her neck after being placed in a
choke-hold; and additional cross-examination relating to her injuries and
actions.

The record
reflects, contrary to Appellant’s assertion that it was the State who made “intent”
an issue, that Appellant raised the defensive theory that Zarya entered
Appellant’s truck voluntarily and engaged in a consensual sex act, thus placing
Appellant’s intent at issue.  See Armstrong v. State, 03-02-00211-CR, 2003
WL 21189756, *7-9 (Tex.App.--Austin May 22, 2003, no pet.)(mem. op., not
designated for publication)(holding that appellant, through cross-examination
of complainant, constructed defensive theory that complainant had engaged in
consensual sex and fabricated kidnapping and sexual-assault allegations to gain
advantage in divorce proceedings, that appellant disputed his intent to engage
in alleged sexual conduct and restrain complainant’s movements without her
consent, placing his intent at issue).

Appellant also
argues that the two offenses are dissimilar enough to disfavor admitting the
extraneous offense to the jury. 
Specifically, that while the complainant in the instant case was
penetrated by Appellant at a construction site a mile from her house, that the
complainant in the extraneous offense was taken by Appellant to his house,
where he penetrated her in his bedroom after which they smoked a cigarette.

We disagree.  The law in Texas is clear that a high degree
of similarity is not required when the purpose of admitting evidence of
extraneous offenses is to show intent, and that high degree of similarities are
required primarily where identity is an issue.  See Plante v. State, 692 S.W.2d 487, 493
(Tex.Crim.App. 1985); Cantrell v. State, 731
S.W.2d 84, 90 (Tex.Crim.App. 1987).

Here, the record
reflects that both Zarya and Macee were forcefully taken from their homes, and
while taken to different locations, (the desert and Appellant’s house) in both
cases they were isolated from anyone who could help them.  After Appellant had each woman in his car, he
restrained each of them, Zarya by pinning her head and neck against the window
and Macee by grabbing her face.  Appellant
used derogatory terms towards both women; physically assaulted each woman;
ripped off their clothing; and in each case forcefully penetrated their vaginas
with his fingers or his hand.[3]  We find there are sufficient similarities
between the charged and extraneous offenses to make the 2008 extraneous offense
probative of Appellant’s intent with respect to Zarya and to rebut Appellant’s
theory of fabrication, which placed his intent at issue.  We hold that the trial court did not abuse
its discretion in admitting the extraneous offense.

Trial courts, when
undertaking a Rule 403 analysis, must balance:  (1) the inherent probative force of the
proffered item of evidence along with; (2) the proponent’s need for that
evidence against; (3) any tendency of the evidence to suggest decision on an
improper basis; (4) any tendency of the evidence to confuse or distract the
jury from the main issues; (5) any tendency of the evidence to be given undue
weight by a jury that has not been equipped to evaluate the probative force of
the evidence; and (6) the likelihood that presentation of the evidence will
consume an inordinate amount of time or merely repeat evidence already
admitted.  Gigliobianco v. State, 210 S.W.3d 637, 641-42 (Tex.Crim.App. 2006).

Appellant argues
that there was no need for the State to introduce the extraneous offense
testimony because Appellant did not testify and no witness testified to
contradict the evidence given by Zarya. 
We disagree.  As noted above, the
record reflects that Appellant did more than assert that he simply “questioned
the accuracy of the complainant’s information.”  Rather, he raised the defensive theories of
fabrication and consent.  The evidence of
the extraneous offenses was probative as it challenged these theories.  See
Theragood, 2011 WL 3848840, at *9; Dial
v. State, 05-09-00741-CR, 2010 WL 4705529, *4 (Tex.App.--Dallas Nov. 22,
2010, no pet.)(not designated for publication). 
The first two factors under the 403 analysis do not favor Appellant.

The trial court
gave limiting instructions to the jury twice regarding the extraneous evidence
testimony, obviating concerns that the testimony would be given undue weight.  See Dial,
2010 WL 4705529, at *4 (noting same regarding factors four and five).  Furthermore, the evidence presented was not
overly long or graphic.  Id., at *4 (noting same regarding factor
six).  The evidence of the sexual abuse
may carry emotional weight, however this was mitigated by the multiple limiting
instructions and the State’s explanation to the jury that the testimony was
presented to demonstrate what Appellant had intended to do to the complainant
in this case.  Id., at *4 (discussing similar presentation regarding factor
three).

We find that the
probative value of the extraneous offense testimony was not substantially
outweighed by the danger of unfair prejudice and the trial court did not abuse
its discretion in admitting the evidence over Appellant’s objection under Rule
403.  Appellant’s first issue is overruled.

II.               
Error
in jury charge in refusing to instruct the lesser-included offense of assault

 

            Appellant’s
second issue asserts error by the trial court in failing to charge the jury on
the lesser offense of Class A misdemeanor assault.  Appellant requested that such an instruction
be given, but the request was denied by the trial court.  Specifically, Appellant made the following
request:

We’re requesting the lesser included
offense of unlawful restraint and the lesser included offense of pure assault –
simple assault Class A misdemeanor assault. 
And the reason for that is State’s Exhibit No. 52.  [Appellant’s] statement says, ‘I slapped
her.  I did not sexually assault
her.  That’s all I did. I didn’t sexually
assault her,’ but he admitted to assault. 
So he’s entitled to it based on their evidence that they put in to a
charge of simple assault.

 

            There
are three distinct criminal offenses contained in Section 22.01(a)(1)-(3) of
the Penal Code, based on the statutory definitions of simple assault.[4]  McKithan
v. State, 324 S.W.3d 582, 591 (Tex.Crim.App. 2010).  Bodily-injury assault under Section 22.01(a)(1)
is a Class A misdemeanor.  Landrain v. State, 268 S.W.3d 532, 536
(Tex.Crim.App. 2008).  Assault by
threatening another with bodily injury under Section (a)(2) and
offensive-contact assault under Section (a)(3) are Class C misdemeanors.  See
§ 22.01(a)(2), (3).

            Appellant
requested that the jury be instructed on “simple assault Class A misdemeanor
assault,” which he reasserts in his brief. 
Appellant did not request an instruction based on offensive-contact
assault under Section 22.01(a)(3).  However,
later in his brief, Appellant argues that his conduct was equivalent to an
offensive-conduct assault.  Appellant
argues that:

The conduct element of sexual assault,
penetrating the vagina with his finger, includes the conduct element of assault
by causing physical contact with the complainant and contact by penetration
with the finger, and contact by penetration or contact that Appellant knew or
should have reasonably believed that the complainant would have regarded as
offensive or provocative.  See id. § 22.01(a)(3).

 

            Appellant
requested that the jury be instructed on the lesser-included offense of “simple
assault Class A misdemeanor assault,” or in other words, assault under Section 22.01(a)(1)
only.  As Appellant did not raise the
issue of offensive-contact assault under Section 22.01(a)(3) to the trial
court, Appellant failed to preserve error regarding the trial court’s omission
of a lesser-included offense based on offensive-contact assault and we will not
consider that argument.  See McKithan v. State, 01-08-00222-CR, 2009
WL 1562883, *4 (Tex.App.--Houston [1st Dist.] June 4, 2009)(mem. op., not
designated for publication), aff’d
324 S.W.3d 582 (Tex.Crim.App. 2010), citing
Kelley v. State, 845 S.W.2d 474, 479 (Tex.App.--Houston [1st Dist.] 1993,
pet. ref’d)(“As appellant made no request for the instruction on the lesser
included offense, we are not to consider it on appeal.”).

            However,
we must consider Appellant’s argument that the trial court erred by not
including bodily-injury assault in the jury charge as a lesser-included offense
of sexual assault.  Appellant argues that
the record reflects “evidence of assault by intentionally, knowingly and
recklessly penetrating [Zarya’s] vagina and by striking her in the head,” and
that the jury could have found that the vaginal penetration was reckless,
supporting the mens rea of simple
assault.  We disagree.

            We
use a two-step analysis to determine whether an appellant was entitled to a
lesser-included offense instruction.  Hall v. State, 225 S.W.3d 524, 528
(Tex.Crim.App. 2007).  The lesser offense
must first come within Article 37.09 of the Texas Code of Criminal Procedure,
that is that “[a]n offense is a lesser included offense if . . . it is
established by proof of the same or less than all the facts required to
establish the commission of the offense charged.”  Tex.Code
Crim.Proc.Ann. art. 37.09(1)(West 2006). 
This inquiry is a question of law and does not depend on the evidence to
be produced at trial, but is performed through comparing the elements of the
offense as they are alleged in the indictment with the elements of the
lesser-included offense.  Hall, 225 S.W.3d at 535-36.  If the offense is properly a lesser-included
offense, the next step is to determine whether there was sufficient evidence at
trial to have required the court to submit the lesser-included offense to the
jury.  Hall, 225 S.W.3d at 528.

Bodily-injury
assault is committed when a person “intentionally, knowingly, or recklessly
causes bodily injury to another, including the person’s spouse . . . .”  Tex.Penal
Code Ann. § 22.01(a)(1)(West 2011).  A person commits the offense of sexual assault
if the person intentionally or knowingly “causes the penetration of the anus or
sexual organ of another person by any means, without that person’s
consent.”  Tex.Penal Code Ann. § 22.011(a)(1)(A).  A sexual assault under § 22.011(a)(1)(A) is
made without consent if, inter alia,
“the actor compels the other person to submit or participate by the use or
physical force or violence.”  Tex.Penal Code Ann. § 22.011(b)(1).

            The
indictment provides in Count I, paragraphs A through C, that Appellant did
intentionally and knowingly abduct another person, by secreting and holding the
complainant in a place where she was not likely to be found (the desert), with
the intent to violate and sexually abuse her; that he did intentionally and
knowingly abduct another person, by secreting and holding the complainant in a
place where she was not likely to be found (the desert), with the intent to
terrorize her; and that Appellant intentionally and knowingly abduct another
person, by secreting and holding the complainant in a place where she was not
likely to be found (the desert), with the intent to inflict bodily injury on
her, constituting the offense of aggravated kidnapping.[5]  Count II of the indictment provides that
Appellant did knowingly and intentionally cause the penetration of the sexual
organ of complainant by means of Appellant’s finger, without the consent of
complainant, by use of physical force and violence.

            As
noted by the Court of Criminal Appeals in McKithan,
the “settled case law” supports decisions that an allegation of “physical force
and violence” in an indictment for sexual assault “is not functionally
equivalent to an allegation of bodily-injury” and that the State is not
required to prove bodily injury to establish “physical force and violence” in
an aggravated sexual assault indictment.[6]  McKithan,
324 S.W.3d at 590.  We find the McKithan reasoning applicable to the
case before us.  See, e.g. Williams v. State, 02-06-454-CR, 2008 WL 623805, *1
(Tex.App.--Fort Worth Mar. 6, 2008, no pet.)(mem. op., not designated for
publication)(holding that assault bodily injury is not a lesser included
offense of attempted sexual assault); White
v. State, 03-01-00616-CR, 2002 WL 1804893, *3-4 (Tex.App.--Austin Aug. 8,
2002, pet. ref’d), cert denied, 555
U.S. 999, 129 S.Ct. 494, 172 L.Ed.2d 365 (2008)(same); Moore v. State, 01-94-01225-CR, 1995 WL 623028, *2-4 (Tex.App.--Houston
[1st Dist.] Oct. 19, 1995, pet. ref’d)(not designated for publication)(same,
noting that the proper inquiry is to look only at the facts the State was
required to prove to establish the statutory elements of the offense charged).

            In
order to establish sexual assault, the State was required to prove the
statutory elements of § 22.011(a)(1)(A) and (b)(1) of the Penal Code, none of
which require a showing of “bodily injury,” as asserted by Appellant.  Because the element of bodily harm was not an
element which the State had to prove to established the charged offense of
sexual assault, bodily-injury assault is not a lesser-included offense.  Moore,
1995 WL 623028, at *4.  The first step of
the lesser-included offense examination, is not met.  Hall,
225 S.W.3d at 528.  We need not reach the
second prong of the test.  Appellant’s
second issue is overruled.

III.            
Error
in refusing to instruct on mitigation defense

            Appellant’s
final issue asserts that the trial court erred during the punishment phase by
failing to instruct the jury on the mitigation defense of voluntary release in
a safe place, as provided in the Texas Penal Code § 20.04(d)(West 2011).  The trial court had initially included such an
instruction however, following an objection by the State, the trial court
sustained the State’s objection and removed the instruction.  In reading the charge to the jury, the trial
court did not give Appellant’s requested instruction.

            Appellant
argues that “the complainant was allowed to leave about a mile from her house
and near residential houses,” where she received aid.  Appellant argues that he was not “coerced by
police or others” into releasing the complainant and there was “no potential
for the complainant to be caught in a police crossfire.”  Appellant argues that because the complainant
was able to walk home where she was assisted by the police and her father, that
she was released in a safe place.  We
disagree.

            Appellant
cites Harrell v. State, 65 S.W.3d
768, 772-73 (Tex.App.--Houston [14th Dist.] 2001, pet. ref’d) and the factors listed
by that court that are relevant to a “safe release” determination.  However, Harrell
supports the trial court’s decision in the instant case.  The Harrell
court noted that the appellant, “in order to avail himself of the mitigating
effect of Section 20.04(d), must first have performed ‘some overt and
affirmative act’ which brought home to his victim that she had been ‘fully
released from captivity.’”  Harrell, 65 S.W.3d at 772, citing Wiley v. State, 820 S.W.2d 401, 411 (Tex.App.--Beaumont 1991, no
pet.).  Such a release “must have
occurred in a place and manner which realistically conveyed to [the victim]
that she was then freed from captivity and in circumstances and surroundings
wherein aid was readily available.”  Id.

            Texas
courts have long held that a kidnap victim’s escape from captivity does not
entitle a defendant to an instruction on the issue of “voluntary release in a
safe place.”  Ex parte Chandler, 182 S.W.3d 350, 355 & n.18 (Tex.Crim.App. 2005); Harrell, 65 S.W.3d at 772-74; Gaither v. State, 04-10-00548-CR, 2011
WL 3915820, *4-5 (Tex.App.--San Antonio Sept. 7, 2011, no pet.)(mem. op., not
designated for publication)(holding that appellant was not entitled to “safe
release” instruction where there was no evidence that appellant “took any
affirmative act to release” the
victim).

            In
the instant case, the record does not reflect that Appellant “released”
Zarya.  Instead, the record shows that
Zarya escaped while Appellant was touching himself.  The record does not reflect a “safe release,”
but instead an “escape.”  The trial court
did not err in denying Appellant’s proposed instruction.  Appellant’s final issue is overruled.

CONCLUSION

Having overruled each of Appellant’s issues,
the judgment of the trial court is affirmed.

 

August
15, 2012

                                                                        CHRISTOPHER
ANTCLIFF, Justice

 

Before
McClure, C.J., Rivera, and Antcliff, JJ.

 

(Do
Not Publish)











[1]
Zarya testified that she could not recall how her bra had been removed during
the struggle, but recalled that she did not remove it voluntarily.  Officers who subsequently searched the area
found her blouse and bra, which were tangled together.





[2]
Relevant evidence is any evidence “having any tendency to make the existence of
any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence.”  Tex.R.Evid.
401.





[3]
In each case, Appellant also tried to take something that belonged to the
complainant: Zarya’s cell phone and identification and Macee’s purse.





[4]
See § 22.01(a)(1)(bodily-injury
assault); § 22.01(a)(2)(assault by threatening another with imminent bodily
injury); § 22.01(a)(3)(offensive-contact assault).





[5]
Paragraphs A through C directly relate to the statutory language for the
offense of aggravated kidnapping.  See Tex.Penal
Code Ann. § 20.04(a)(1) and (4)(West 2011).

 





[6]
The McKithan court provides a number
of cites to support the proposition that “physical force or violence” is not
synonymous with “bodily injury”:  Wisdom v. State, 708 S.W.2d 840, 843 n.3
(Tex.Crim.App. 1986)(the terms “force” and “violence” are “synonymous when used
in relation to assault, and include any application of force even though it
entails no pain or bodily injury and leaves no mark”); Brown v. State, 576 S.W.2d 820, 822-23 (Tex.Crim.App. 1978)(defendant
compelling complainant to submit to sexual intercourse by holding a gun to her
head sufficient to show force and threats); Trejo
v. State, 242 S.W.3d 48, 50-52 (Tex.App.--Houston [14th Dist.]
2007)(aggravated assault not lesser-included offense of charged
aggravated-sexual-assault offense because serious bodily injury was not a “fact
required” to establish the “physical force and violence” and “threatening to
use force and violence” allegations in the indictment), overruled on other grounds, Trejo v. State, 280 S.W.3d 258 (Tex.Crim.App.
2009); Edwards v. State, 97 S.W.3d
279, 291 (Tex.App.--Houston [14th Dist.] 2003, pet. ref’d)(explicit verbal
threats and physical injury are not required to prove that a defendant
compelled the victim’s participation in a sexual assault by physical force and
violence)(and cases cited); Gonzales v.
State, 2 S.W.3d 411, 414-16 (Tex.App.--San Antonio 1999, no pet.)(defendant
compelling the complainant to submit to sexual intercourse by laying on top of
the complainant and preventing her from moving sufficient to show physical
force and violence).