# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00649-CR

---

**Trevor William Anderson, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 277TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 19-0607-K277, THE HONORABLE RICK J. KENNON, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Trevor William Anderson of the offense of sexual assault and assessed punishment at seven years' imprisonment, probated. The district court sentenced Anderson to seven years' imprisonment, suspended imposition of his sentence, and placed him on community supervision for eight years. In a single point of error on appeal, Anderson asserts that the evidence is insufficient to prove that he committed the offense. We will affirm the judgment of conviction.

### BACKGROUND

The State charged Anderson with sexually assaulting Beth Brown by intentionally and knowingly causing the penetration of her anus with his sexual organ, without her consent.[1]

---

[1] To protect the victim's privacy, we refer to her using a pseudonym. *See* Tex. Const. art. I, § 30(a)(1) ("A crime victim has the ... right to be treated with fairness and with respect for

The case proceeded to a jury trial. The witnesses included Brown; Sergeant Jason Watson of the Round Rock Police Department, who investigated the offense; and Sexual Assault Nurse Examiner (SANE) Amanda Brookshire, who examined Brown.

Brown testified that at the time of the offense, she was 21 years old and attending college at the Round Rock campus of Texas State University. She met Anderson on Bumble, an online dating app. They soon began texting each other on Snapchat and eventually met up at a hotel, where they had consensual sex. The next night, they met up at a dance hall, but she did not have sex with Anderson that night and instead spent the night at her father's house. The following day, Brown was "extremely hungover." Anderson invited her to spend the night with him in his hotel room, and she agreed, telling him, "Yeah, I'll come over and hang out, but I don't feel good. I don't know if I want to do anything sexual, but I have no problem coming to hang out." Brown spent that night with Anderson. Brown could not remember "100 percent" if they had sex that night, but she thought that they did.

The next morning, Anderson told Brown that he wanted to have sex with her again, but Brown told him that she was still not feeling well and did not want to have sex. Anderson put his hand down her shorts and continued asking her to have sex. Brown continued telling him no. Eventually, Anderson "got on top" of Brown, "slid [her] shorts to the side," and "started to like push himself inside of [her]." Brown testified that Anderson's full weight was on top of her, and although she was able to move her arms, she "wouldn't have been able to pick up [her] entire body" because she was on a soft hotel bed and "[t]hose things, you kind of sink into them." Brown testified that at that point, she "just kind of laid there and let him do his thing."

the victim's dignity and privacy."); Tex. Code Crim. Proc. art. 58.152 (allowing use of pseudonyms to maintain confidentiality of files and records of victims of sexual assault).

Approximately two or three minutes later, Anderson "finishe[d]" and "just kind of roll[ed] off of" Brown.

After that, Brown "just kind of rolled over onto [her] stomach to try and find [her] phone." As Brown was laying on her stomach, Anderson "rolled on top of" her, with his "stomach on top of [her] back." Brown felt "squished onto this bed," and she "couldn't really move because [she] was on [her] stomach." At that point, Brown felt Anderson's fingers "kind of like trace around" her anus, and she realized that he wanted to have anal sex with her. Brown reminded Anderson of a previous conversation they had in which she informed him that she did not want to have anal sex. She told him, "We talked about this. I don't want to do this." Anderson did not listen. Brown testified, "And he was still on top of me, and he just started to put like his finger inside of my butt while he still was, you know, saying, 'Come on, please,' that kind of thing." Brown added that Anderson's weight was "on top of [her] the whole time," and she could not move. She did not think she could have gotten Anderson off her. Brown told Anderson again, "I don't want to do this." Anderson then "took his finger out" and proceeded to "put his penis inside of [her] butt." Brown testified that "[i]t hurt really bad" and that she kept telling Anderson that it hurt. Brown was crying, facedown in the bed, as it happened, and Anderson's weight was over her body the entire time. Brown recounted, "I tried to get my upper body up but he was on top of me. I couldn't. I was sinking into the bed." She added that she had attempted to push him off her. Brown did not know how long Anderson was on top of her or when he stopped, but at some point he got off of her, got off the bed, and went into the bathroom. Brown gathered her belongings, told Anderson she was going home, and left the hotel. Brown testified that she then went to get breakfast at a drive-thru restaurant, where she "sobb[ed] hysterically" in her car. Brown recounted that after the incident, Anderson "kept texting me and

3

trying to call me and begging me to forgive him." In addition to apologizing repeatedly, Anderson also texted Brown, "Please don't tell anyone about this." Copies of Brown's and Anderson's messages were admitted into evidence, including the following exchange:

[Anderson]     Sorry . . . it won't be like that anymore. Along [sic] of things are changing after this weekend

[Brown]        It doesn't matter. You just kept begging me to have sex after I said I didn't feel good. And not only that you literally put it in my butt when I told you not too [sic], like I'm not okay with that and I told you that and I'm pissed that you didn't care

[Anderson]     Okay I'm sorry. If you want you can block me just like everyone else does

The next day, Brown went to SafePlace in Austin to get a SANE exam. Approximately two weeks later, Brown reported the incident to law enforcement.

Sergeant Watson interviewed both Brown and Anderson during the investigation. Watson testified that Brown told him that Anderson had penetrated her anally by force and that Anderson admitted to him that he had penetrated Brown's anus but that he had done so by mistake. Anderson also admitted to Watson that Brown had told him, "No." Watson further testified that Brown had mentioned Anderson's weight and that "he was on top of her and she was unable to move," which Watson equated with physical force.

SANE nurse Brookshire testified that Brown told her that she was "kind of sore" in her thighs following the assault and had a pain level of 6 out of 10 in her vagina and rectum. Brown reported to Brookshire that during the assault, she was on her stomach and Anderson was on top of her, and she "couldn't really move." Brown told Brookshire that Anderson put his

4

penis and fingers inside her anus during the assault. Brown also told Brookshire, "I felt when I tried to say no or push him off, he wouldn't let me. He used his body weight to keep me down so I couldn't get up." Brookshire characterized this as "physical force" and "physical restraint." During the physical portion of the exam, Brookshire noticed bruises above Brown's left breast and on Brown's left upper thigh, the back of her left leg, and the back of her right calf. She also observed an area of redness at the bottom of the anus. A copy of the SANE report was admitted into evidence. In the report, Brookshire also noted "strangulation" as an injury to Brown, but in her testimony, she clarified that Brown did not use that term and that this could have meant any number of things, including that Brown suffered "a minimal amount" of "obstructed breathing" during the assault, possibly from being "facedown in a pillow."

The jury convicted Anderson of sexual assault as charged and the district court sentenced him as noted above. This appeal followed.

## STANDARD OF REVIEW

"In assessing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Garcia v. State*, 667 S.W.3d 756, 761 (Tex. Crim. App. 2023) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "A proper review of evidentiary sufficiency considers the cumulative force of

5

the evidence." *Garcia*, 667 S.W.3d at 761-62 (citing *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)).

"When considering a claim of evidentiary insufficiency, a reviewing court does not sit as the thirteenth juror and may not substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence." *Id*. at 762 (citing *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010)). "The jury acts as the sole judge of the credibility of the witnesses and may choose to believe all, some, or none of the testimony presented." *Id*. (citing *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986)). "Furthermore, the trier of fact may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence." *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). "If the record supports conflicting inferences, the reviewing court must 'presume that the factfinder resolved the conflicts in favor of the prosecution' and defer to the jury's factual determinations." *Garcia*, 667 S.W.3d at 762 (quoting *Wise*, 364 S.W.3d at 903).

"A determination of evidentiary sufficiency does not turn on how the jury was instructed" but "is measured by the essential elements of the offense as defined by a hypothetically correct jury charge." *Delarosa v. State*, 677 S.W.3d 668, 673 (Tex. Crim. App. 2023). "The hypothetically correct jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id*. (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "When a statute lays out several alternative methods of committing the offense, and the indictment alleges only one of those methods, 'the law as authorized by the

6

indictment' is limited to the method specified in the indictment." *Geick v. State*, 349 S.W.3d 542, 545 (Tex. Crim. App. 2011) (citing *Golihar v. State*, 46 S.W.3d 243, 254-55 (Tex. Crim. App. 2001)).

**DISCUSSION**

As charged in the indictment, a person commits the offense of sexual assault if the person intentionally or knowingly causes the penetration of the anus of another person by any means, without that person's consent. Tex. Penal Code § 22.011(a)(1)(A). A sexual assault is without the consent of the other person if the actor compels the other person to submit or participate by the use of physical force or violence. *Id*. § 22.011(b)(1). The only element that Anderson challenges in this appeal is the lack of consent. Specifically, he contends that the evidence is insufficient to prove that he used "physical force or violence" to compel Brown to submit to anal intercourse. We disagree.

"There are no set criteria by which it can be determined that force either has or has not been applied in any particular rape case, but rather, the facts of each individual case determine the issue." *Brown v. State*, 576 S.W.2d 820, 823 (Tex. Crim. App. 1978). We consider the totality of the circumstances, and resistance by the victim is not required. *See id*.; *see also Garcia v. State*, 750 S.W.2d 922, 923 (Tex. App.—Corpus Christi-Edinburg 1988, no pet.) (finding use of physical force and violence where victim did not resist but appellant had secured compliance by choking victim); *Smith v. State*, 719 S.W.2d 402, 403 (Tex. App.— Houston [1st Dist.] 1986, no pet.) (finding use of physical force and violence where victim did not resist sex because assailant, her father, had beaten her most of her life to secure compliance). Moreover, "[e]xplicit verbal threats and physical injury are not necessary to prove a defendant

7

compelled a victim's participation." *Edwards v. State*, 97 S.W.3d 279, 291 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). This Court recently held that evidence showing that the assailant was on top of the victim, who felt "pinned down" and tried to push appellant off her during the assault, was sufficient to prove physical force under the totality of the circumstances of that case. *See Limonta-Diaz v. State*, 593 S.W.3d 447, 457 (Tex. App.—Austin 2020, pet. ref'd) ("Given the disparity of their sizes, appellant's position on top of [the victim], and her unsuccessful attempts to push appellant off, the jury could reasonably infer that appellant restrained [the victim] with his body weight and that this constituted a use of physical force.").

Similar circumstances exist in this case. Brown testified that Anderson was "on top of" her, with his "stomach on top of [her] back." She felt "squished onto this bed," and she "couldn't really move because [she] was on [her] stomach." Brown also testified that Anderson's weight was "on top of [her] the whole time," that she could not move, and that she did not think she could have gotten Anderson off her. Brown added that she had attempted to push him off her but was unable to do so: "I tried to get my upper body up but he was on top of me. I couldn't. I was sinking into the bed." Sergeant Watson recounted that Brown mentioned Anderson's weight and told him that Anderson "was on top of her and she was unable to move." Brown made similar remarks to the SANE nurse, telling her, "I felt when I tried to say no or push him off, he wouldn't let me. He used his body weight to keep me down so I couldn't get up." Moreover, Brown had multiple bruises on her body, which the jury could have reasonably inferred was evidence that Anderson had held her down on the bed with his body weight. Additionally, the jury could have reasonably inferred from Anderson's apologetic messages to Brown that Anderson had a consciousness of guilt regarding the circumstances of the assault, including the use of force.

8

Viewing the totality of this evidence and all reasonable inferences therefrom in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Anderson used physical force to compel Brown to submit to anal intercourse. Accordingly, the evidence is sufficient to prove that the intercourse was without Brown's consent and thus constituted the offense of sexual assault as charged in the indictment.

We overrule Anderson's sole issue on appeal.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Gisela D. Triana, Justice

Before Justices Baker, Triana, and Kelly

Affirmed

Filed: August 27, 2024

Do Not Publish