**Affirmed and Memorandum Opinion filed November 20, 2014.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-13-00686-CR

---

### DAMON KENDRICK DOVE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

### On Appeal from the 268th District Court
### Fort Bend County, Texas
### Trial Court Cause No. 12--DCR-061181A

---

## M E M O R A N D U M   O P I N I O N

In two issues, appellant Damon Kendrick Dove challenges his conviction of sexual assault. *See* Tex. Penal Code § 22.011. We affirm.

### I. BACKGROUND

On June 12, 2012, Deputy Steven Treece of the Fort Bend County Sheriff's Department was responding to a 911 call about a possible burglary when the complainant in this case ran up to his patrol car window and reported a sexual

assault.

The complainant subsequently gave a videotaped statement in which she stated that she met appellant at the pool earlier on the day of the offense. Appellant told her about his children and offered to give her a ride home. When appellant dropped the complainant off at her home he asked her if she wanted to watch a basketball game that night. The complainant agreed, and said that appellant picked her up later that night, and they went to a bar to watch the basketball game. After drinking beer and playing pool at the bar, appellant asked the complainant if she wanted to drive somewhere to see some deer. The complainant asked how they would see deer at night when it was dark. Appellant told her he would leave his headlights on to light the area. Appellant drove to a secluded location on a dirt road. Contrary to what he told the complainant earlier, appellant turned off the headlights as soon as he stopped the car. The complainant asked him what was happening. Appellant responded, "Get out of the car and walk home or put out." The complainant said at that moment she was terrified. The complainant described appellant's tone as demanding. The complainant was afraid to get out of the car because she did not know where she was. She was afraid appellant might kill her.

Appellant then climbed over the console into the passenger seat where the complainant was sitting, and began to take off his pants. Appellant demanded that the complainant take off her top and began to pull off her clothes. At that time the complainant was afraid appellant would continue hurting her. After penetrating her while in the front seat, appellant told the complainant to get in the back seat "or walk home." The complainant complied and climbed in the back seat. Appellant requested that she turn around with her back toward him. He was hitting her vagina at the same time as he assaulted her, which caused the complainant to lose control of her bladder. At that point the complainant grabbed her purse, pushed appellant

2

away, and fled from the car.

As the complainant was running she took off her shoes, and ran across a field. She saw a tall fence and jumped over it to get to the house. There were two children and a dog in the backyard of the house. The children went inside and the complainant went to the front door of the house asking for help. The homeowner told the complainant to go away so she ran to another house, knocked on the door, but there was no answer. She ran away from that house when she saw the sheriff's deputy responding to the burglary call.[1]

The day after the offense, appellant learned that law enforcement officers considered him a suspect in the sexual assault. Appellant phoned Detective Jarret Nethery, the investigating officer, and expressed a desire to tell his account of the night. Nethery and Detective Marshia Cox conducted and recorded a noncustodial interview with appellant. A redacted version of the videotaped interview was played for the jury.

At the beginning of the interview the detectives explained to appellant that he was not under arrest and was free to leave. According to appellant, he and the complainant met at the pool earlier in the day and he gave the complainant and her brother a ride home. Appellant asked the complainant if she wanted to go out that night, and she agreed to go to a bar to watch a basketball game. Appellant and the complainant left the bar at approximately 9:30 p.m., drove to a subdivision near where both he and the complainant lived, and parked on the side of the road. Appellant admitted that he penetrated the complainant's vagina with his penis. They moved to the back seat of the car and continued until she urinated on herself. The complainant decided to leave; appellant offered to drive her home, but the

---

[1] The homeowner of the first house misunderstood why the complainant was in his backyard, called 911, and reported a burglary.

complainant chose to walk home. Appellant stated they were parked for approximately 45 minutes, but the complainant never told him she did not consent to intercourse.

After appellant's interview was shown to the jury, Nethery testified to several inconsistencies in appellant's interview. First, the location that appellant said was near his and the complainant's home was actually not walking distance to either home. Second, appellant said he was parked on the side of the road, but Nethery said a car would have been detected if parked near the road.

The complainant testified at trial, and repeated the events as she told them in the videotaped interview. At trial, the complainant testified that appellant told her, "Get out of the car and walk home or take your clothes off." This differed slightly from the ultimatum the complainant repeated in the video. The complainant testified that while appellant was on top of her in the front seat of the car she did not feel she could leave. She was afraid appellant would kill her if she tried to leave. After the complainant contacted the sheriff's deputy she was transported to the hospital where she first spoke with Detectives Nethery and Cox. The next day the complainant, Nethery, and Cox found one of the complainant's shoes in the area where appellant had driven the night before. Treece found the complainant's other shoe the night of the assault when he was responding to the 911 call.

The sexual assault nurse examiner testified that she performed an examination on the complainant in which she detected abrasions and bruises consistent with the complainant jumping over a fence. The nurse also detected a .5 centimeter tear at the 6:00 position on the labia minora. She testified that this location is the most common place an injury occurs with penetration.

The nurse examiner further testified that the complainant reported the assault as follows:

Patient states: He — I think his name is spelled Mapon — picked me up at 7:00 p.m. We went to the bar, and he asked me if I wanted to go see some deer for a while. I thought that sounded cool, so I said okay. He drove down this dirt road and parked, and that's where it happened. He raped me. He told me in this mumbling, scary sounding voice to either put out or walk home. I was really scared, and I didn't know if he would hurt me. He got on top of me. I said, 'No.' And he said, 'Put out or get out and walk home.' He put his penis in my vagina. It hurt me so bad. It hurt my bladder so bad I peed on myself. I jumped out of the car and ran, jumped a fence, and asked for help.

The nurse concluded that the physical findings were consistent with the history given by the complainant. Appellant was convicted of sexual assault and the jury assessed punishment at 35 years in prison.

## II. SUFFICIENCY OF THE EVIDENCE

In his first issue appellant argues the evidence is insufficient to support his conviction. When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether a rational jury could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). In making this review, an appellate court considers all evidence in the record, whether it was admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013).

We may not substitute our judgment for that of the jury by reevaluating the weight and credibility of the evidence. *Brooks v. State*, 323 S.W.3d 893, 900 (Tex. Crim. App. 2010). We defer to the jury's responsibility to resolve any conflicts in the evidence fairly, weigh the evidence, and draw reasonable inferences. *Id*. The jury alone decides whether to believe eyewitness testimony, and it resolves any conflicts in the evidence. *Id*. In conducting a sufficiency review, we do not engage

5

in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

A person commits sexual assault if he intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means, without that person's consent. Tex. Penal Code § 22.011(a)(1)(A). Appellant admitted having sex with the complainant on the night of the offense. The issue before us is whether the evidence supports the jury's finding that the complainant did not consent. With regard to consent, the jury was instructed that a sexual assault is without the consent of the other person if: "(1) the actor compels the other person to submit or participate by the use of physical force or violence; or (2) the actor compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the actor has the present ability to execute the threat[.]"

Appellant argues the jury heard no evidence the complainant was forced to do anything. He argues that while the complainant was frightened, appellant's actions and words did not cause her fear.

The fact finder considers the totality of the factual circumstances in determining whether the victim consented. *Brown v. State*, 576 S.W.2d 820, 823 (Tex. Crim. App. 1978); *see also Graves v. State*, 994 S.W.2d 238, 243–44 (Tex. App.—Corpus Christi 1999, pet. ref'd) (finding evidence of implicit threat of force when defendant threatened to beat victim as he had done on at least one prior occasion); *Gonzalez v. State*, 2 S.W.3d 411, 415 (Tex. App.—San Antonio 1999, no pet.) (finding evidence of physical force when defendant laid on top of the complainant preventing her from moving).

The testimony of a victim, standing alone, is sufficient to support a

conviction for sexual assault. *Villalon v. State*, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990); *Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). Moreover, the jury is the sole judge of the credibility of the witnesses at trial. *Johnson v. State*, 23 S.W.3d 1, 6 (Tex. Crim. App. 2000); *see Hernandez v. State*, 804 S.W.2d 168, 170 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (stating "the jury had the ability to observe the witnesses carefully, to hear the fear or violence projected from each witness, and to evaluate the credibility of each witness and the overall sufficiency of the evidence on the issue of consent"). Explicit verbal threats and physical injury are not necessary to prove a defendant compelled a victim's participation. *Edwards v. State*, 97 S.W.3d 279, 291 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd)

In this case, the jury heard testimony that appellant drove the complainant to a secluded area, not the area he described in his voluntary statement. He instructed the complainant to get out of the car and walk home or "put out." The complainant testified she was afraid for her life and was afraid to get out of the car because she did not know where she was. The complainant testified that appellant struck her vaginal area with his hand so forcefully that it caused her pain.

There is nothing in the record to suggest the jury's resolution of the testimony was not reasonable. *See Cain v. State*, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997). The complainant testified to the fear she perceived from appellant and the threats appellant used to keep her from fleeing. Viewing the evidence in a light most favorable to the prosecution, we conclude a rational trier of fact could have found beyond a reasonable doubt that appellant intentionally or knowingly caused the sexual organ of the complainant to contact his sexual organ without her consent. Therefore, the evidence is legally sufficient to find appellant guilty of sexual assault. We overrule appellant's first issue.

## III.  EXCLUSION OF MEDICAL RECORDS

In his second issue appellant argues that relevant and admissible evidence of the complainant's mental health history should have been admitted at trial.

At trial, with regard to the complainant's mental health history, Dr. Nancy Baptiste, a psychiatrist at Texana Living Center, testified that she treated the complainant for schizophrenia. She testified that the general symptoms of schizophrenia include a loss of being in touch with reality, hallucinations, delusions, and disorganized thoughts. When Baptiste first saw the complainant, she was taking Seroquel and Haldol, antipsychotic drugs, and Cogentin, a drug which addresses side effects that may occur from some antipsychotic drugs. Baptiste testified that the only delusions of the complainant that Baptiste recorded were that she was pregnant and that the government "was after her grandparents."

During Dr. Baptiste's cross-examination, defense counsel presented her with an unidentified document and asked Dr. Baptiste whether she had reviewed the document to make her initial diagnosis of the complainant. Dr. Baptiste responded, "I can't say for sure . . . I might have." The following discussion then took place at the bench:

> MR. MCCLURE [defense counsel]: At this time, I do intend to go into that if the State has an objection —
>
> THE COURT: First off, it's a document that's not been admitted into evidence yet. It's part 4 of Texana's records — as far as the exception to the hearsay rule —
>
> MR. MCCLURE: Well, that's what I have Ms. Marcus here for.
>
> THE COURT: The entire records [sic] doesn't come in —
>
> MR. MCCLURE: Of course. Of course.
>
> THE COURT: Under the highlighted portion —
>
> MR. MCCLURE: Of course.

THE COURT: But this doctor has not testified that she used it in any diagnosis or treatment, so it's not relevant as to this physician.

MR. MCCLURE: Okay. I guess I'll just wait.

THE COURT: I'll sustain the State's objection at this point, but they're not even close to getting —

MR. MCCLURE: I understand.

As defense counsel continued to cross-examine Baptiste he showed her several unidentified documents and asked whether she had relied on those documents in her diagnosis and treatment of the complainant. Each time Baptiste answered that she could not specifically remember the complainant's treatment and that she did not rely on the documents presented to her by counsel.

Following his conviction appellant filed a motion for new trial to which he attached the complainant's mental health records. Appellant argued that had the records been admitted he would have been found not guilty by the jury. The trial court denied appellant's motion. On appeal appellant argues the trial court erred in excluding the complainant's mental health records. The State argues appellant waived error by failing to offer the mental health records into evidence.

Appellant argues that he preserved error during the conversation at the bench when the document, which the court identified as "part 4 of Texana's records," was shown to Baptiste and the trial court sustained the State's objection. Contrary to appellant's assertion, he never offered the complainant's mental health records into evidence. Appellant attempted to cross-examine Baptiste on the document, and counsel stated, "I guess I'll just wait." Appellant did not later attempt to introduce the documents either for purposes of cross-examination of Baptiste, or as an offer of proof for purposes of preservation of error. Even if the above-quoted exchange could be considered a ruling on the offer of the evidence, appellant failed to make a timely offer of proof to the trial court.

In order to preserve error regarding a trial court's decision to exclude evidence, the complaining party must comply with Rule of Evidence 103 by making an "offer of proof" which sets forth the substance of the proffered evidence. *Mays v. State*, 285 S.W.3d 884, 890 (Tex. Crim. App. 2009). The primary purpose of an offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful. *Id.* A secondary purpose is to permit the trial court to reconsider its ruling in light of the actual evidence. *Id.*

In this case, appellant did not present the documents to the trial court until after judgment in his motion for new trial. Although such an offer serves the purpose of enabling the appellate court to review the documents, appellant did not give the trial judge an opportunity to reconsider his ruling prior to the jury's verdict. Because appellant failed to offer the evidence at trial, or make a timely offer of proof, he waived his objection to the exclusion of the medical records. *See* Tex. R. App. P. 33.1. We overrule appellant's second issue.

The judgment of the trial court is affirmed.


/s/     John Donovan
        Justice


Panel consists of Justices Boyce, Jamison, and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).

10