**Earl BROWN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 56774.**

Court of Criminal Appeals of Texas, Panel No. 3.

Nov. 29, 1978.

Rehearing En Banc Denied Jan. 17, 1979.

Antonio G. Cantu, San Antonio, for appellant.

Bill M. White, Dist. Atty., Gordon V. Armstrong and Alan E. Battaglia, Asst. Dist. Attys., San Antonio, for the State.

Before ROBERTS, PHILLIPS and VOLLERS, JJ.

## OPINION

VOLLERS, Judge.

In a trial before the court on a plea of nolo contendere appellant was convicted of aggravated rape. Punishment was assessed by the court at five years.

The record reflects that appellant was duly admonished of the consequences of his plea pursuant to Art. 26.13, V.A.C.C.P. and appellant and his counsel executed a written waiver and consent to stipulation of testimony and stipulations. Included in the stipulated evidence are the sworn statements of the prosecutrix and a female companion who was present at the time of the transaction. The statements reveal that on the night of October 31, 1976, complainant, age 26, and her 20 year old companion went to a San Antonio night club. At approximately 1:45 a. m. after they had consumed "a few drinks," they left the club and walked to their automobile parked in a nearby parking lot. Before the women could enter the car and drive away they were accosted by appellant who asked for a ride. When they refused to give him a ride appellant held on to the door, persisting. Upon being refused a second time, appellant pulled a pistol and put it to the side of the complainant's head. The complainant asked appellant what he wanted and appellant stated he "wanted my friend." Complainant told appellant to leave her friend alone and "take me instead." While still pointing the pistol at complainant, appellant entered the back seat of the automobile and forced complainant to climb over into the back seat with him. Complainant again asked appellant what he wanted and appellant, while holding the pistol at her head, began taking down his pants. Complainant started to remove her pants at which point appellant said "yes, that is

what I want." Appellant continued to point the pistol at the prosecutrix's head and then forced her to engage in sexual intercourse with him. At appellant's insistence complainant kissed him and agreed to see him again. Appellant asked for complainant's phone number and she wrote a fictitious telephone number on his hand. Appellant then stated "now I'll leave you alone . . ." and left the automobile. The two women immediately searched for and found a policeman and related the incident. Appellant was apprehended a short time later and identified by complainant and her companion as complainant's assailant.

Omitting the formal portions, appellant's indictment reads:

"EARL BROWN did then and there knowingly and intentionally by force that overcame such earnest resistance as might reasonably have been expected under the circumstances and threats that would prevent resistance by a woman of ordinary resolution under the same and similar circumstances, because of a reasonable fear of harm have sexual intercourse with . . ." complainant, "a female not his wife, without her consent, and did then and there intentionally and knowingly compel said complainant to submit to such act of sexual intercourse by threatening the imminent infliction of SERIOUS BODILY INJURY AND DEATH to said complainant . . ." [1]

■ Appellant's sole contention on appeal is that the stipulated evidence is insufficient to sustain a finding of guilt by the trial court. Primarily, it appears to be appellant's contention that to sustain the charge of rape the proof must show that the appellant "compelled his victim to submit by force that overcomes such earnest resistance as might reasonably be expected under the circumstances *and* he compels her to submit or participate by any threat that would prevent resistance by a woman of ordinary resolution." An examination of Sec. 21.02(b), Penal Code, indicates that there are several ways in which lack of consent to sexual intercourse can be shown. The indictment in this case alleges lack of consent by reason of force as set out in subsection (b)(1) and the lack of consent by reason of threats as set out in subsection (b)(2). In *Lucero v. State,* 502 S.W.2d 750, 755 (1973), quoting *Dyer v. State,* Tex.Cr. App., 283 S.W. 820, 823 (1925), this Court acknowledged that:

"It has always been the rule that an indictment which charges a rape to have been committed by force, threats, and fraud, is fully sustained by proof of any one of these three methods thus alleged. See also 4 Branch's Ann.P.C.2d, Sec. 1937, p. 256."

■ Appellant's further complaint as to the sufficiency of the evidence is aimed at the fact that the victim "volunteered" in order to prevent the forcible rape of her 20 year old companion and thereby consented to intercourse with him. It has long been the rule that "[w]here rape by both force and threats is alleged, it is proper to consider the cogency that the threats may have contributed to the force, and the intensifying influence that the force may have imprinted to the threats." 48 Tex.Jur.2d 637, Sec. 4; *Brooks v. State,* 466 S.W.2d 789, 790

---

1. The offense of rape is committed under V.T. C.A. Penal Code, Sec. 21.02 when

"(a) A person . . . has sexual intercourse with a female not his wife without the female's consent.
(b) The intercourse is without the female's consent under one or more of the following circumstances:
(1) he compels her to submit or participate by force that overcomes such earnest resistance as might reasonably be expected under the circumstances;
(2) he compels her to submit or participate by any threat, communicated by actions, words, or deeds, that would prevent resistance by a woman of ordinary resolution, under the *same or similar circumstances,* because of a reasonable fear of harm; . . ."

Aggravated rape is defined under V.T.C.A. Penal Code, Sec. 21.03(a)(2) as

"(a) A person commits an offense if he commits rape as defined in Section 21.02 of this code or rape of a child as defined in Section 21.09 of this code and he:
(2) compels submission to the rape by threat of death, serious bodily injury, or kidnapping to be imminently inflicted on anyone."

(1971). See also *Harris v. State,* 441 S.W.2d 189 (1969) and *Perez v. State,* 50 Tex.Cr.R. 34, 94 S.W. 1036 (1906). There are no set criteria by which it can be determined that force either has or has not been applied in any particular rape case, but rather, the facts of each individual case determine the issue. *Bundren v. State,* 152 Tex.Cr.R. 45, 211 S.W.2d 197 (1948). Though the above cases were decided under the former Penal Code,[2] a comparison of the previous provisions with our present Penal Code's definitions of "force" and "threats"[3] clearly illustrates a traditional emphasis on the consideration of the totality of the factual circumstances in determining whether consent on the part of the female has been given.

In *Brooks,* supra, the complainant was at home with only her five year old daughter when the perpetrator, Brooks, entered, pointing a gun at complainant. He grabbed the child and told complainant, "If you don't want this little girl killed, you will do just what I say." Brooks then grabbed the complainant's arm, bent it up against her back and advised her that he could also harm her other children on their return from school. As Brooks continued to remind the complainant of his ability to harm her children, complainant engaged in intercourse with Brooks without resisting. We held that, "it is clear that any resistance to the appellant would have endangered both the prosecutrix and her children. *Considering these circumstances,* as provided [by law], no resistance by the prosecutrix was required [to illustrate her lack of consent]." *Brooks* at 790 (emphasis added).

■ Likewise we find in the case before us, upon consideration of the totality of the circumstances, that no resistance to appellant was required of this victim in order for us to conclude that the subject transaction was effected without her consent. Faced with a situation in which appellant would not be dissuaded by the women's refusal to give him a ride, then forcing the door open, pulling a gun and holding it to complainant's head, coupled with the overt threat of permanent trauma to a younger, less mature woman, we find that complainant was prevented from resisting appellant's advances and was compelled to participate in the act of intercourse. The display of the weapon, the forcible refusal by appellant to allow complainant to close her car door, and the other words and actions of appellant here, were sufficient to prevent and overcome resistance which might be expected by a woman of ordinary resolution, because of a reasonable fear of harm. V.T.C.A. Penal Code, Sec. 21.02(b)(1) and (2).

Inherent in the concept of force, whether it be physical force, threats, or some other type of coercion, is that when involuntarily confronted with distasteful options, it is very human to select that which is the least distasteful. For whatever personal reasons the victim determined appellant's rape of her would be less distasteful than his raping her young friend, it cannot be concluded that she had the option to exercise any more freedom of choice in the matter than the woman who ultimately submits physically to rape rather than assure her own death or critical injury. The fact that the victim "volunteered" could be interpreted by the trial court not as consent to have sexual intercourse, but as an effort to prevent the rape of her companion. Clearly the victim's resignation to intercourse with appellant was the result of a combination of threats and force and has no more attributes of a voluntary—or consensual—act than the submission of the mother, pursu-

---

**2.** Article 1183, Vernon's Ann.P.C., 1925, defined "rape" in part as "the carnal knowledge of a woman without her consent obtained by force, threats or fraud . . . ." Article 1184, Vernon's Ann.P.C., 1925, defined "force" for purposes of the rape statute as that which "must have been such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case." Finally, Article 1185, Vernon's Ann. P.C., 1925, provided that the "threat" in rape cases "must be such as might reasonably create a just fear of death or great bodily harm, in view of the relative condition of the parties as to health, strength and other circumstances of the case."

**3.** See n.1, supra.

ant to threats toward her daughter, related in *Brooks,* supra.

We have stated that "threats may be considered in connection with force resorted to so as to bring the case within the definition of rape."[4] *Harris* at 191.

"When both force and threats are alleged, and there is evidence of each, it is not necessary that either the force or the threats measure up to the standard of the statutory definition; the cogency which one contributes to the other may be sufficient to constitute all that is required. *Church v. State,* 552 S.W.2d 138, 140 (1977); *Twomey v. State,* 520 S.W.2d 784, 786 (1975)."

Finally, appellant contends that even if his acts constituted rape, there was no element present which would make the transaction aggravated. See n.1, supra. Appellant overlooks the evidence that clearly reflects that he was holding a gun to the victim's head even as he had sexual intercourse with her. The imminent threat of death or serious bodily injury to complainant was therefore sufficiently existent to aggravate the rape offense. *Church v. State,* supra.

The evidence is sufficient to sustain the conclusion of the trial court that appellant was guilty of the offense of aggravated rape.

The judgment is affirmed.

---

4. See also *Vanderpool v. State,* 155 Tex.Cr.R. 318, 234 S.W.2d 879 (1950); *Broadway v. State,* 418 S.W.2d 679 (1967).