PD-1645-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/28/2015 10:18:39 PM
Accepted 1/29/2015 3:12:13 PM
ABEL ACOSTA
CLERK

NO. **PD-1645-14**

# IN THE COURT OF CRIMINAL APPEALS
# FOR THE STATE OF TEXAS

---

## RICHARD LOPEZ
*Appellant,*

**v.**

## STATE OF TEXAS
*Appellee*

---

## FROM THE FOURTH COURT OF APPEALS, SAN ANTONIO
## No. 04-13-00300-CR

---

## PETITION FOR DISCRETIONARY REVIEW
(Oral Argument Requested)

---

FILED IN
COURT OF CRIMINAL APPEALS

January 29, 2015

ABEL ACOSTA, CLERK

Chad P. Van Brunt
State Bar No. 24070784
LAW OFFICE OF CHAD VAN BRUNT

John T. Hunter
State Bar No. 24077532
LAW OFFICE OF JOHN HUNTER

310 S. St. Mary's Street
Suite 1840 – Tower Life Bldg.
San Antonio, Texas 78205
(210) 399-8669
(210) 568-4927 *telecopier*
*vanbruntlaw@live.com*

Attorneys for Richard Lopez

**IDENTITY OF PARTIES AND COUNSEL**

Trial Court: 379th District Court of Bexar County, Texas, Hon. Ron Rangel Presiding.

Trial Counsel for the State of Texas: Hon. Lorina Rummel (144th Criminal District Court, Cadena-Reeves Justice Center, 300 Dolorosa, 2nd Floor, San Antonio, Texas 78205), State Bar No. 10393200; Assistant District Attorney Jan Ischy (Paul Elizondo Tower, 101 W. Nueva, 4th Floor, San Antonio, Texas 78205), State Bar No. 10432340.

Trial Counsel for Richard Lopez:  Donald H. Flanary, III. (310 S. St. Mary's Street, 29th Floor – Tower Life Bldg., San Antonio, Texas 78205) State Bar No. 24045877; Chad P. Van Brunt, State Bar No. 24070784; John T. Hunter, State Bar No. 24077532 (Address listed on previous page).

Intermediate Appellate Court: The Fourth Court of Appeals, San Antonio, Texas.

Counsel for Richard Lopez on Appeal: Chad P. Van Brunt; John T. Hunter

Counsel for the State of Texas on Appeal: Jay R. Brandon (Paul Elizondo Tower, 101 W. Nueva, 3rd  Floor, San Antonio, Texas 78205), State Bar No. 02880500.

# TABLE OF CONTENTS

Identity of Parties and Counsel...................................................... ii

Table of Authorities..................................................................... iii

Statement Regarding Oral Argument ......................................... vi

Statement of the Case ................................................................ vi

Statement of Procedural History ............................................... vii

Questions Presented................................................................... viii

Argument.................................................................................... 1

Question 1.................................................................................. 1

Question 2.................................................................................. 9

Question 3.................................................................................. 11

Conclusion................................................................................. 17

Prayer for Relief ....................................................................... 18

Certificate of Service................................................................ 19

Certificate of Compliance......................................................... 19

Appendix ................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Bannach v. State,* 704 S.W.2d 331 (Tex. App.—Corpus Christi 1986, no writ) ...................................................................................... 4

*Brown v. State*, 576 S.W.2d 820 (Tex. Crim. App. 1978) ..................... 5, 6

*Church v. State,* 552 S.W.2d 138 (Tex. Crim. App. 1977) ................... 6

*Davis v. State,* Cause No. 05-94-01739, 1996 Tex. App. LEXIS 3377 (Tex. App.—Dallas 1996, no writ) ......... 6

*Edwards v. State*, 97 S.W.3d 279 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ............................... 4, 5

*Gollihar v. State,* 46 S.W.3d 243 (Tex. Crim. App. 2001) ..................... 7

*In re B.S.H.*, 308 S.W.3d 76 (Tex. App.—Fort Worth 2009, no pet.) ...................................................................................... 7

*Jackson v. Virginia*, 443 U.S. 307 (1979) ............................... *passim*

*Jordan v. State*, 883 S.W.2d. 664 (Tex. Crim. App. 1994) ................... 12

*King v. State*, 29 S.W.3d 556 (Tex. Crim. App. 2000) ........................... 12

*Kyles v. Whitley*, 115 S. Ct. 1555 (1995) ............................... 13, 15

*La Sara Grain Co. v. First Nat'l Bank of Mercedes,* 673 S.W.2d 558 (Tex. 1984) ................................................................ 7

*Lacour v. State*, 8 S.W.3d 670 (Tex. Crim. App. 2000) ......................... 11

*Lopez v. State,* No. 04-13-00300-CR, 2014 Tex. App. LEXIS 11601 (Tex. App.—San Antonio 2014) ................................... *passim*

*Malik v. State,* 953 S.W.2d 234 (Tex. Crim. App. 1997) ....................... 7

*Muniz v. State*, 851 S.W.2d 238 (Tex. Crim. App. 1993) ........................ 7

*Reyes v. State*, 849 S.W.2d 812 (Tex. Crim. App. 1993) ........................ 12

*Sellers v. Estelle*, 651 F.2d 107 (5th Cir.  1981) .................................... 13

*Sidney v. State*, 560 S.W.2d 679 (Tex. Crim. App. 1978)....................... 5

*Smith v. State,* 286 S.W.3d 333 (Tex. Crim. App. 2009) ........................ 12

**Constitutional Provisions and Statutes**

U.S. CONST. Amend. 5 ..........................................................................9, 17
U.S. CONST. Amend. 14 ........................................................................9, 17
TEX. CONST. Art. I § 19  .......................................................................9, 17
TEX. PENAL CODE § 22.011 ................................................................. 1, 6, 7

## STATEMENT REGARDING ORAL ARGUMENT

This case addresses several questions that implicate the fundamental rights of the accused as they apply to an extremely long and complex record of a life-sentence conviction. In light of this, oral argument would assist this Honorable Court in its understanding of the case and the factual issues addressed by the trial court in a way that written briefing cannot not fully accommodate standing alone.

## STATEMENT OF THE CASE

On May 20, 2009, The State of Texas charged Richard Lopez in a seven count indictment alleging aggravated assault, sexual assault, and five counts of aggravated sexual assault. [CR 7]. The State proceeded to jury trial on April 15, 2013. Richard Lopez pleaded guilty to Count VII of the indictment, alleging aggravated assault, and not guilty to counts I – VI of the indictment. [RR Vol. 5 pg. 22 – 23]. The Jury found Richard Lopez not guilty of counts I, II, III, of the indictment, but found Richard Lopez guilty of Count IV of the indictment, alleging aggravated Sexual Assault by oral penetration of the complainant with the sexual organ of the defendant. Count V was a lesser-included offense of Count IV and thus rejected upon conviction of the greater offense. The jury sentenced Richard Lopez to twenty years in prison for Count VII and life in prison on Count IV. Lopez filed a timely notice of appeal and motion for new trial, which was

overruled by operation of law. [CR Supp 1 at 3] Lopez amended his notice of appeal to include the trial court's denial of his motion for new trial on July 18, 2013.

## STATEMENT OF PROCEDURAL HISTORY

Richard Lopez sought direct appeal and the Fourth Court of Appeals affirmed the judgment of conviction. *Lopez v. State,* No. 04-13-00300-CR, 2014 Tex. App. LEXIS 11601 (Tex. App.—San Antonio 2014) (mem. op.). Lopez filed a motion for rehearing on November 5, 2014, which was denied by the lower court on November 24, 2014. With this Court's extension of time for filing a petition, granted on December 17, 2014, this Petition for Discretionary Review is timely filed.

**GROUNDS FOR REVIEW**

1.     Is the definition of "physical force or violence" in the sexual assault statute subject to an interpretation where proof of mere threatened force will suffice for the purposes of the *Jackson v. Virginia* standard, even when a conviction for threatened force alone would not be authorized by the pleadings pursuant to this Court's decision in *Golihar v. State*?

2.     When an appellate court conducts a legal insufficiency review as to a count of conviction in a multi-count indictment, may the court properly consider conduct specifically charged in the indictment that the jury considered at the trial and necessarily rejected by finding the defendant not guilty of that conduct?

3.     When the prosecution conceals a complaining witness's favorable testimony about the defendant regarding sentencing, may the reviewing court impose an "admissibility" test for determining the materiality prong of *Brady v. Maryland* on the review of the denial of a hearing on a motion for new trial?

## ARGUMENT

## Ground 1

The Fourth Court of Appeals' decision in this case merits discretionary review because the holding threatens to deprive Texas Penal Code Section 22.011(b)(1) of all meaning. Lopez was charged with a sexual assault obtained by physical force or violence; nevertheless, the reviewing court conflated the proof required for a sexual assault predicated upon "[compelling] the other person to submit by the use of actual force or physical violence" with a completely separate subsection addressing *threats* of force or violence. In so doing, the Fourth Court has taken the unprecedented view that proof of threatened force can suffice for actual force, even if state failed to allege threats of force in the indictment. *Compare* TEX. PENAL CODE § 22.011(b)(1) (2009) ("compels the other person to submit or participate by the use of physical force or violence"), *with* TEX. PENAL CODE § 22.011(b)(2) (2009) ("the actor compels the other person to submit or participate by *threatening* to use force or violence against the other person, and the other person believes that the actor has the present ability to execute the threat.").

At the trial of this cause, the complaining witness, J.S, testified that Lopez committed an aggravated assaulted her by striking her with a metal broom handle around 6:00pm. [RR Vol. 5 at 136]. Lopez then calmed down, bandaged J.S.'s

1

wounds, and helped her get dressed. [RR Vol. 6 at 9]. The couple returned to their bedroom, and smoked cigarettes together for an undetermined period of time. [RR Vol. 6 at 14 – 15]. Eventually, J.S fell asleep at approximately 11:00 pm. [RR Vol. 6 at 16]. She awoke three and a half hours later at 2:30 am to their toddler leaving the living room sofa and coming into the bedroom. [*Id*]. Lopez was also asleep when the toddler came into the room. [RR Vol. 6 at 18 ln 1-2] ("Daddy, wake – Mom, wake up."). When Lopez woke up, he placed their toddler in the bed and tried to help the child go to sleep. [RR Vol. 6 at 18 ln 22]. J.S moved from the floor onto the bed to assist Lopez. [RR Vol. 6 at 19]. The couple devoted an hour lying in bed with the child trying to lull him back to sleep. [*Id*]. Once the child fell back to sleep, "J.S" testified that she tried to initiate a conversation with Lopez. [RR Vol. 6 at 19 ln 24 – 25]. Lopez then asked J.S to perform oral sex on him. [RR at 20]. When asked by the prosecution what "J.S" was thinking at the time, "J.S" testified that she didn't even think about it:

> Q (prosecutor): If you hadn't performed [oral] sex on him, what would have happened in your mind?
> A: I don't know
> Q: Okay. Do you think it would have been more of what had happened before?
> A: **I honestly don't know because I didn't even think to refuse.**

[RR Vol. 6 at 20]. After the sexual act, J.S left Lopez's home and drove herself to the hospital, leaving her child at the Lopez residence. [RR Vol. 6 at 24, 27].

2

The Fourth Court recites these facts – as well other facts necessarily rejected by the trier of fact, a separate question presented addressed *infra* – to reach the conclusion that because J.S. was "still suffering from the numerous injuries . . . previously inflicted on her," the infliction of those injuries at an attenuated time still suffices for physical violence. *Lopez,* 2014 Tex. App. LEXIS at * 7. The lower court then buttresses this position by noting "J.S. had violently experienced over a course of several hours the type of physical force Lopez would use on her if she answered a question in a manner contrary to the answer Lopez wanted to hear." *Id.* Upon these two propositions, the lower court reasoned, rest the entirety of the proof that the sexual act alleged was without J.S.'s consent. Had the State charged this case with the "threats" language of subsection (b)(2), the lower court might have been correct in its assessment. However, for the court to pigeon hole these two arguments into a case for sexual assault by means of actual force or violence is specious and dangerous to the legislature's intent in drafting the sexual assault statute.

In support of its conclusion that the evidence was legally sufficient, the lower court relied upon authority from the Fourteenth District in Houston, the Thirteenth District in Corpus Christi, and this honorable Court for the general proposition that the sufficiency of a "forced" sexual assault case is not contingent upon an actual forceful act *per se*, but rather a case-by-case analysis of whether or

not compulsion existed. *Lopez*, 2014 Tex. App. LEXIS at * 3. None of the authorities relied upon by the Court stand for the propositions made in the lower court's opinion. The opinion cites to *Edwards v. State*, 97 S.W.3d 279 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd), for the proposition that it is the presentation of a distasteful option that is the *sine qua non* of the "consent" element of sexual assault, rather than a showing of explicit violence. In a generalist, global sense, this statement is true – Texas law accounts for eleven different ways that a sexual act may lack the consent of a participant – but this statement is completely inapplicable to the facts of Lopez's case. In *Edwards*, a correctional employee inserted his penis into the food slot of an inmate transportation bus and proceeded to forcefully pull the victim's head onto his penis using the chains, which he had fashioned in a particularly painful and awkward configuration to facilitate this objective. *Id* at 283. Similarly, in *Bannach v. State,* 704 S.W.2d 331, 333 (Tex. App.—Corpus Christi 1986, no writ), also cited by the lower court, the victim was "grabbed around her eyes and throat and [her head forced down with] excessive force." *Id.* The victim was dragged and then forcefully penetrated without lubrication, causing obvious injury to the victim's genitals. *Id*. The sexual acts described in *Edwards* and *Bannach* are textbook examples of "actual physical force or violence," as the act itself required physical exertion from the actor to move the victim into position and comply. In contrast, in

the case at bar, Lopez simply asked "J.S." to perform oral sex, and she did so. He did not pull her head toward his genitals, grab her, or brandish a weapon. In this case, unlike in *Edwards* and *Bannach*, no forceful or violent acts occurred contemporaneously with the sexual act.

Furthermore, in *Edwards*, the indictment authorized a conviction upon *either* proof of "physical force or violence" or "threatening to use force or violence." *Id*. at 290 – 291 ("both situations [force and threat of force] were alleged."). This charging decision authorized a conviction upon either prosecutorial theory. *Id* at 291. ("When such methods of committing the offense are alleged conjunctively, proof of any one of the ways charged in the indictment will support a conviction." (*citing Sidney v. State*, 560 S.W.2d 679, 681 (Tex. Crim. App. 1978). The lower court also cited to *Brown v. State*, 576 S.W.2d 820, 823 (Tex. Crim. App. 1978), stating "there are no set criteria by which it can be determined that force either has or has not been applied in any particular rape case, but rather, the facts of each individual case determine the issue." *Brown,* 576 S.W.2d at 823. Of course, the context of this quotation renders that holding utterly inapplicable to Lopez's case:

> *It has long been the rule that 'where rape by **both force and threats** is alleged, it is proper to consider the cogency that the threats may have contributed to the force, and the intensifying influence that the force may have imprinted to the threats*. There are no set criteria by which it can be determined that force either has or has not been applied in any particular rape case, but rather, the facts of each individual case determine the issue.

*Brown v. State,* 576 S.W.2d 820, 822 (Tex. Crim. App. 1978); *see also Church v. State,* 552 S.W.2d 138, 140 (Tex. Crim. App. 1977) ("***When both force and threats are alleged . . . it is not necessary that either the force or the threats measure up to the standard of the statutory definition***; the cogency which one contributes to the other may be sufficient.") (emphasis added). This is not a threat case because the State failed to plead the "threatened force" language of Section 22.011(b)(2); it is inconceivable how circumstances not related to the question of whether Lopez physically pushed, shoved, pulled, grabbed, tore, beat, or coerced at knife or gunpoint J.S.'s mouth into contact with his penis should have any relevance to the sufficiency review. The Fourth Court could not point to a single contemporaneous act indicating that Lopez physically forced "J.S." to have sex with him. The facts of this case do not afford the reviewing court the same luxury as those cases involving an indictment that plead sections 22.011(b)(1) and (b)(2). In virtually all sexual assault sufficiency cases, more remote acts of violence may form the basis for a threatened act of physical force, but not the actual use of force, as is alleged in the case at bar. *Cf. Davis v. State,* Cause No. 05-94-01739, 1996 Tex. App. LEXIS 3377 at *8 (Tex. App.—Dallas 1996, no writ) (finding defendant's conviction legally sufficient when indictment alleged both threatened and actual force and complainant testified that she was afraid to resist).

The only way to justify the Fourth Court's decision in light of the authority

it relied upon is to construe its holding to mean that sections 22.011(b)(1) and (b)(2) are interchangeable; such a holding would mean that the State is not bound by its pleading decision on material manner and means elements of the offense – a rule never previously held or adopted by the law of this State. *See Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (Holding that sufficiency is measured by a hypothetically correct jury charge accurately setting out the law and authorized by the indictment, describing the offense, without increasing the burden of proof ); *see also Gollihar v. State,* 46 S.W.3d 243, 255 (Tex. Crim. App. 2001) ("Similarly, when the statute defines ***alternatives methods of manner and means*** of committing an element and the indictment alleges only one of those methods, ***'the law' for purposes of the hypothetically correct jury charge, is the single method alleged in the indictment.***") (emphasis added).

The Fourth Court's holding also subverts the intent of the legislature, who clearly intended "actual force" and "threats of force" to mean different things and to constitute different criminal acts. *Cf. Muniz v. State*, 851 S.W.2d 238, 244 (Tex. Crim. App. 1993) (statutory interpretation requires court to effectuate the collective intent or purpose of the legislators who enacted the legislation); *In re B.S.H.*, 308 S.W.3d 76, 80 (Tex. App.—Fort Worth 2009, no pet.) ("'Generally, courts are to construe statutes so as to harmonize with other relevant laws, if possible.'" (quoting *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673

7

S.W.2d 558, 565 (Tex. 1984))). If the lawmakers desired threats of force and force itself to mean the same thing for the purposes of divining the absence of consent in a rape case, they could have combined the subsections or omitted subsection (b)(1) from the Sexual Assault statute entirely. This Court should prevent further misapplication of the statute.

The lower court's opinion attempted to contort the facts of the case to fit an actual force model, despite the opinion's exclusive reliance on threatened force cases. In so doing, the opinion fashions a dangerous precedent. The court concludes that the conviction passes sufficiency review because J.S. was still suffering from her wounds previously inflicted by Lopez. Under this rationale, a man who pushed his wife and broke her arm as a result could be charged with sexual assault by means of actual force or violence, even if the sexual act giving rise to the prosecution transpired weeks or months later, but while she was still in a cast. If a couple have a fight that draws blood, but elect to "kiss and make up" rather than involve the authorities, is the actor barred from engaging in sexual intercourse with the woman so long as she is bleeding? What if the wound was scabbed over when the sex act occurred? What if the wound had formed over time into an unsightly scar?

The Fourth Court's reasoning is unworkable; it goes out of the way to apply the force or violence requirement of subsection (b)(1) at the expense of the

common sense expectation of contemporaneity. Without question, the proper standard of review for legal insufficiency in a use of force or violence case turns on the "totality of the circumstances;" however, the scope of the totality must have some limitations. We know this to be true because the legislature created two sets of "totalities:" the set of facts constituting a threat of force and the set of facts constituting actual physical force or violence. When a forceful or violent act occurred many hours, days, weeks, or months ago, that fact may very well contribute to a finding by a trier of fact that the victim felt threatened at present, even if that conduct would otherwise not amount to a threat standing alone. However, that does not mean that an act remote in time to the sexual event can suffice for the purposes of subsection (b)(1), namely, compelling the victim to submit in that moment by physically forcing her to do so. Such reasoning is spurious, serving no other purpose than to disguise the court's untenable conclusion that because J.S. felt threatened she was also physically forced to perform oral sex.

## Ground 2

The lower opinion also deprives Lopez of due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and due course of law under Article I, § 19 of the Texas Constitution by impermissibly considering acquitted conduct to justify a count of conviction. In so doing, the Fourth Court's

9

approach raises a matter of first impression before this court – undersigned could not identify any authority supporting such an action on sufficiency review.

The intermediate opinion concluded that Lopez's conviction for aggravated sexual assault was based upon legally sufficient evidence because the totality of the circumstances countenanced an environment in the Lopez household where she was suffering from wounds Lopez inflicted and ""J.S." had violently experienced over a course of several hours the type of physical force Lopez would use on her if she answered a question in a manner contrary to the answer Lopez wanted to hear." In support of this conclusion, this Court points out, "Lopez then pulled J.S.'s pants off and inserted the pole into her vagina and anus." *Lopez,* 2014 Tex. App. LEXIS at * 5. **Richard Lopez was acquitted of those acts**; he was acquitted of every count in the indictment alleging that he used the metal pole as a sexual instrument. In fact, Lopez was acquitted of every sexual allegation in the indictment save the count at issue. In order to acquit Lopez of the allegations that he used a metal pole to penetrate the complainant, the jury necessarily rejected those facts as evidence.

The Fourth Court's presumption that Lopez was in fact guilty of alleged acts despite the fact that he was acquitted by a jury of his peers in open court undermines the legitimacy of the *Jackson v. Virginia* legal insufficiency standard, deprives Lopez of due process and due course of law by rendering the presumption of innocence meaningless, and works a performative contradiction into our

10

jurisprudence by ostensibly refusing to upset the trier of fact's verdict while simultaneously using facts contrary to that verdict to preserve the conviction.

Courts should review the evidence in the light most favorable to the verdict when reviewing a legal insufficiency claim. *Jackson v. Virginia*, 443 U.S. 307, 318 – 19 (1979); *Lacour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). Thus, by injecting facts not only unsupported but also expressly rejected by the jury's verdict, this Court has made its decision on something other than the *Jackson v. Virginia* standard of review. Because Lopez has a constitutional right to be convicted only upon a showing of legally sufficient evidence to support that conviction, it logically flows that he also has the constitutional right to appellate review pursuant to the correct standard for legal insufficiency. As the Supreme Court in *Jackson* noted, it is "axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process." *Jackson*, 433 U.S. at 314. This principle applies equally to a conviction supported on appellate review by a charge acquitted. The intermediate court's ruling fails to adequately protect that standard of review.

## Ground 3

The Fourth Court of Appeals' opinion in the case at bar misapplied the appropriate standard of determining when an abuse of discretion has occurred in denying an accused the opportunity to be heard on a motion for new trial. When a

defendant presents a motion for new trial raising matters not determinable from the record that could entitle the defendant to relief, the trial court abuses its discretion in failing to hold a hearing. *see King v. State*, 29 S.W.3d 556, 559 (Tex. Crim. App. 2000). When the grounds in the motion are based on matters not already in the record, a new trial motion must be supported by an affidavit, either from the defendant or someone else, setting out the factual basis for the claim. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). This affidavit does not have to establish a *prima facie* case or even "reflect every component legally required to establish relief" but affidavits must be more than conclusory. *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993); *Jordan v. State*, 883 S.W.2d. 664, 665 (Tex. Crim. App. 1994).

The court below ignored the fact that Lopez had made a *Brady*-based Motion for New Trial claim by concluding that J.S.'s opinions regarding the length of Lopez's sentence as stated in her affidavit were inadmissible – or at least possibly inadmissible given the murky nature of the law regarding the admissibility of such opinions– and thus the trial court did not abuse its discretion by refusing to hear the motion. *Lopez*, 2014 Tex. App. LEXIS at *19-20. The Supreme Court of the United States and the Fifth Circuit have repeatedly rejected the "admissibility" test for materiality applied by this Court in its opinion:

> In addressing the issue of materiality, ***the Magistrate found that Cantera's oral statements and Valenzuela's***

12

> ***written statement would have been inadmissible***, hence these reports were immaterial. Such a conclusion is unwarranted. First, by enabling the defense to examine these reports, Sellers may have been able to produce witnesses whose testimony or written statements may have been admissible. *Martinez v. Wainwright*, 621 F.2d 184 (5th Cir. 1980). Second, ***the evidence here suppressed was material to the preparation of petitioner's defense, regardless of whether it was intended to be admitted into evidence or not***.

*Sellers v. Estelle*, 651 F.2d 1074, 1076 n. 6 (5th Cir. 1981). The Supreme Court has also emphasized this point in light of its adoption of a "reasonable probability" test for analyzing *Brady* claims:

> **The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial**, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when **the Government's evidentiary suppression 'undermines confidence in the outcome of the trial.'**

*Kyles v. Whitley*, 115 S. Ct. 1555, 1556 (1995).

The lower court's analysis ignores numerous statements made within J.S.'s affidavit suggesting the need for a full hearing to develop those claims and jumps the gun to an in-trial admissibility review of one statement in the affidavit that the victim wanted a shorter sentence. [Supp.CR 17-19] It simply did not address J.S.'s remarks that the prosecutors withheld J.S. and her beliefs about Lopez from the defense and prevented the defense team from speaking with J.S. prior to the

13

sentencing hearing by means of false pretense. [Supp.CR 18-19] This was, at least, a showing of materiality which the hearing would have fleshed-out not to mention the need to determine the veracity of the claim that the State was the reason the favorable testimony was withheld. It was error to reject Lopez's claim without even addressing this critical facet of the issue.

What is more perplexing is that the lower court states that, "[s]ince J.S. referred to her views during her victim impact statement, her views are determinable from the record." *Lopez*, 2014 Tex. App. LEXIS at \*17. If this was meant to suggest that the trial court was somehow aware of a more detailed explanation of J.S.'s feelings about Lopez and his sentence then how could the matter be reviewed on appeal? There has been no transcription of J.S.'s statements to Lopez after sentence was imposed into the reporter's record for the appellate court to review and those statements were never presented to a jury. Furthermore, J.S.'s statements regarding the prosecutorial misconduct were not addressed in her statement to Lopez after sentencing, and were not ascertained until J.S. gave her sworn statement in the affidavit.

Moreover, it is simply unclear from the opinion of the court below whether the trial court denied Lopez's Motion for New Trial pursuant to an affidavit-only hearing, where he considered J.S.'s affidavit, or whether the trial court's decision to overrule the motion by operation of law functioned as a refusal to hear the

14

motion at all. On the one hand, the lower court acknowledges that the affidavit was used in support of receiving a hearing on the motion for new trial[1] and on the other hand it claims that the trial court did consider J.S.'s affidavit and thus "heard" evidence despite the fact that the motion was overruled by operation of law.[2] These two paragraphs are inconsistent with one another. For the sake of clarity, it is at least worthy of this Court's review to understand exactly how Lopez's motion was denied so that the correct standard of review can be applied.

The intermediate court's opinion fails to reference *Brady* or its progeny entirely. By solely deciding the issue on the basis of whether or not the verbatim statement of one part of J.S.'s affidavit would have been admissible at sentencing, the lower court applied the "reasonable probability" test required in Brady and its progeny incorrectly. *Kyles*, 115 S. Ct. at 1556. It is difficult to imagine how the knowledge imparted by J.S.'s affidavit was not favorable to the defense. The woman who had just testified that she was brutally beaten and raped by the accused wanted to tell the jury that she still cared for Lopez. [Supp.CR 19] She wanted to tell the jury that her emotions concerning Lopez also contained sentiments of affection, and that she had concerns about the father of her child

---

[1] "Lopez prayed for the trial court to review the affidavit . . . and conduct an evidentiary hearing." *Lopez*, 2014 Tex. App. LEXIS at *16.

[2] "Because the trial court's order reflects that the trial court reviewed J.S.'s affidavit, the trial

[2] "Because the trial court's order reflects that the trial court reviewed J.S.'s affidavit, the trial court was not required to consider live testimony at a hearing." (internal citations omitted) *Lopez,* 2014 Tex. App. LEXIS at *20.

15

being permanently locked away from interacting with their son. *Id*. She wanted to tell the jury why she wanted Lopez to receive a lesser sentence. *Id*. Simply because she chose to equate those emotions to a mathematical set of years in a punishment scheme does not mean that the defense would have elicited her testimony on the stand in such a fashion.

Put another way, it was error for the Fourth Court to construe J.S.'s affidavit as only presenting new evidence of her opinions as to the appropriate sentence. The prosecution's misconduct was also extrinsic to the record and not discoverable prior to or during trial. J.S. also alluded to facts and feelings outside the record that would have put a reasonable person on notice that the victim had something material to say. [Supp.CR18-19] The trial court abused its discretion by not recognizing the gravity of J.S.'s remarks she swore to in her affidavit and the lower court applied the wrong standard in its review of that failure.

The lower court has now set a new high watermark for a defendant to have a hearing on a motion for new trial. One that belies the U.S. Supreme Court's precedent in the case of a *Brady* violation claim and belies this Court's precedent for justifying a hearing on a motion for new trial. With only thirty days to file a motion for new trial, it seems that defense counsel must now conduct an entire deposition and put it in the form of an affidavit in order to prevent a trial court

16

from abusing its discretion. The goal post has been moved and it must be rectified by this Court.

## CONCLUSION

Lopez's conviction should be rendered as an acquittal because the state failed to produce any evidence in support of a conviction for aggravated sexual assault based upon physical force or violence. Considering all evidence in the light most favorable to the verdict, no rational trier of fact could have found Lopez guilty beyond a reasonable doubt of the offense charged in the indictment. Nevertheless, the Fourth Court of Appeals' decision improperly applied the standard of review for legal insufficiency by conflating two separate statutory manners and means of commission so as to lessen the state's burden of proof. Furthermore, the Fourth Court considered acquitted conduct in making its sufficiency review, thereby depriving Lopez of due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and due course of law under Article I § 19 of the Texas Constitution. In the event that this Court rejects Lopez's call for an acquittal on legal insufficiency grounds, the Court must, at a minimum, remand the cause to the Fourth Court of Appeals to have the correct standard of review applied without the consideration of acquitted conduct. Finally, the Fourth Court failed to properly apply the correct standard of review when considering Lopez's request for a hearing on his motion for new trial. Lopez

17

submitted an affidavit with his motion for new trial that raised materially relevant information not ascertainable from the record that placed the court on notice of a *Brady v. Maryland* violation, which deprived Lopez of materially favorable sentencing evidence. This honorable Court should remand the cause to the trial court for a hearing on Lopez's motion for new trial.

WHEREFORE, PREMISES CONSIDERED, RICHARD LOPEZ respectfully prays this honorable Court to grant his petition for discretionary review.

<div style="margin-left:40%;">

Respectfully Submitted,

/s/ Chad P. Van Brunt
State Bar No. 24070784
LAW OFFICE OF CHAD VAN BRUNT

John T. Hunter
State Bar No. 24077532
LAW OFFICE OF JOHN HUNTER

310 S. St. Mary's Street
Suite 1840 – Tower Life Bldg.
San Antonio, Texas 78205
(210) 399-8669
(210) 568-4927 *telecopier*
*vanbruntlaw@live.com*

Attorneys for Richard Lopez

</div>

**CERTIFICATE OF SERVICE**

This certifies that on January 28, 2015, a true and correct copy of the above and foregoing Petition for Discretionary Review was served on Jay Brandon, assistant district attorney with the Bexar County District Attorney's Office, Paul Elizondo Tower, 101 W. Nueva, 3rd Floor, San Antonio, Texas 78205 via email to jay.brandon@bexar.org and hand delivery.

/s/ Chad P. Van Brunt

**CERTIFICATE OF COMPLIANCE**

I hereby certify that, pursuant to Rule 9.4 of the Texas Rules of Appellate Procedure, this document contains 4,498 words.

/s/ Chad P. Van Brunt



# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00300-CR

Richard M. **LOPEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR5395
Honorable Ron Rangel, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  October 22, 2014

AFFIRMED

Richard Lopez was convicted by a jury of aggravated sexual assault and aggravated assault. On appeal, Lopez challenges the sufficiency of the evidence and the trial court's rulings on his motion to suppress and motion for new trial.  Lopez also raises a double jeopardy challenge.  We overrule Lopez's issues and affirm the trial court's judgment.

### BACKGROUND

Lopez pled guilty to aggravated assault after he severely beat J.S., the mother of his then three-year-old son, with a metal pole.  A jury also found Lopez guilty of penetrating J.S.'s mouth

with his sexual organ, but acquitted him of charges that he penetrated J.S.'s sexual organ and anus with the metal pole. Lopez was sentenced to twenty years imprisonment for the aggravated assault offense, and life imprisonment for the aggravated sexual assault offense. Lopez appeals only the aggravated sexual assault conviction.

## LEGAL SUFFICIENCY

The jury was instructed to find Lopez guilty of aggravated sexual assault if the jury found beyond a reasonable doubt that Lopez intentionally or knowingly caused the penetration of J.S.'s mouth by Lopez's sexual organ without J.S.'s consent. The charge stated that sexual assault is without consent "if the actor compels the other person to submit or participate by the use of physical force or violence." The jury was further instructed to find Lopez guilty of "aggravated" sexual assault if it found that Lopez "did by acts or words place [J.S.] in fear that serious bodily injury would be imminently inflicted on [J.S.]."

Lopez contends the evidence is insufficient to show that he compelled J.S. to participate by use of physical force or violence. Lopez asserts no "physical act of force or violence occurred contemporaneously with the sexual act." Lopez further asserts "Lopez had attacked the complainant earlier in the day in the privacy of Lopez's bedroom with the metal pole, but a considerable period of time had elapsed between that incident and the alleged offense."

Lopez also contends the evidence is insufficient to show that J.S. was in fear that serious bodily injury would be inflicted on her if she refused his request for her to perform a sexual act on him. Lopez asserts any fear J.S. was experiencing was of future consequences "rather than a menacing risk of present danger" and any fear J.S. experienced was unreasonable given her child's presence in the room.

"Explicit verbal threats and physical injury are not necessary to prove a defendant compelled a victim's participation." *Edwards v. State*, 97 S.W.3d 279, 291 (Tex. App.—Houston

[14th Dist.] 2003, pet. ref'd). "Inherent in the concept of force, whether it be physical force, threats, or some other type of coercion, is that, when a person involuntarily faces distasteful options, it is very human to select that which is least distasteful." *Id.* "There are no set criteria by which it can be determined that force either has or has not been applied in any particular rape case, but rather, the facts of each individual case determine the issue." *Brown v. State*, 576 S.W.2d 820, 823 (Tex. Crim. App. 1978). "Whether consent was lacking must be determined from the totality of the circumstances in each particular case." *Bannach v. State*, 704 S.W.2d 331, 333 (Tex. App.— Corpus Christi 1986, no pet.). In order for fear of serious bodily injury to be imminent, the fear must relate to present injury, not fear of some future consequence. *Brown v. State*, 960 S.W.2d 265, 268-69 (Tex. App.—Corpus Christi 1997, no pet.).

J.S. testified that she was living with Lopez and their son on the day of the assault. While the three of them were at a child's birthday party at a restaurant, Lopez became upset, accused J.S. of flirting with another man, and demanded that they leave. When they arrived home, Lopez told J.S. to put their son, who was asleep, on the couch. Lopez then told J.S. to go to the bedroom with him. J.S. estimated that it was around 6:00 p.m.

As J.S. entered the room and Lopez closed and locked the door, Lopez hit her in the back of the head really hard, causing her to fall forward and black out. J.S. regained consciousness and was on her knees while Lopez was yelling at her and questioning her. If Lopez did not like the answer, he would punch J.S. in her face, head, and chest. When J.S. reminded Lopez that her ribs were injured, Lopez responded that he then knew where to hit her. When Lopez grabbed a metal pole, J.S. moved under a desk in the corner of the room to try to protect herself. Lopez then began striking J.S. on the areas he could reach, including her legs, calves and arms. Lopez used the pole to both strike and jab J.S. J.S. began bleeding. At that point, J.S. estimated that the beating had

lasted about an hour.  Lopez then pulled J.S.'s pants off and inserted the pole into her vagina and anus.  Lopez then told her to put her pants back on.

Sometime later, J.S. was back on her knees in front of Lopez.  Lopez said he was going to ask more questions, and if J.S. gave the wrong answer, he was going to hit her with the pole.  In response to one answer, Lopez hit J.S. across the side of the face and split open her eye.  In response to the next answer, Lopez hit J.S. across the side of her face cutting her ear open (J.S.'s ear later had to be sewn back together).  In response to another answer, Lopez raised the pole above his head with both arms and hit J.S. on the top of her head, splitting her head open (J.S. required staples to close this wound).  At that point, J.S. started "freaking out" because blood was "gushing out everywhere."  J.S. begged to be allowed to take a shower, and Lopez allowed her to shower with him.  When J.S. told Lopez she was in pain, he urinated on her.  Lopez exited the shower and asked J.S. another question.  When she gave him an answer, Lopez punched her in the mouth.

After Lopez exited the bathroom, J.S. tried to run out through the front door, but Lopez grabbed her hair and dragged her in a choke-hold back to the bedroom.  J.S. went to the closet to get dressed, but Lopez grabbed a knife and cornered her in front of the closet.  J.S. tried to say things to get Lopez to stop because she was afraid he was going to kill her or inflict further pain.  Lopez eventually put the knife down and allowed J.S. to get dressed and bandage her cuts.  They returned to the bedroom and began smoking a cigarette.  J.S. took some Tylenol for her pain and asked if she could lie down and go to sleep.  Lopez told her she could not lie on the bed because she would get blood on the bed.  J.S. then lay down on a blanket on the floor and went to sleep. J.S. estimated that it was around 11:00 p.m.

Around 2:30 a.m., J.S.'s son walked into the room.  J.S.'s son started crying and tried to awaken Lopez because he saw J.S. bleeding and thought she was dead.  Lopez then allowed J.S. to lie down on the blanket on the bed with him and their son to try to calm their son.  Once their

son was asleep, Lopez took J.S.'s hand and started making her rub on his penis. Lopez then asked J.S. to perform oral sex on him. J.S. stated that she was still intimidated by what happened earlier and wanted to keep the peace. J.S. was still bleeding and in pain and did not even think to refuse. J.S. stated she was too afraid to refuse. J.S. estimated it was around 4:00 a.m. Lopez and J.S. began watching a movie and smoking their last cigarette. When Lopez asked J.S. to get another box of cigarettes from her car, J.S. drove away and went to the nearest hospital.

From the forgoing evidence, the jury could have inferred that Lopez compelled J.S. to perform oral sex through the physical force and violence he inflicted on her for five hours in the same room in which he then wanted to engage in oral sex while she was lying on a blanket to prevent her blood from getting on the bed. Although Lopez argues that the prior violence was too attenuated at the time Lopez requested oral sex, J.S. was still suffering from the numerous injuries Lopez previously inflicted on her which were both described in J.S.'s testimony and which the jury visualized from the photographs introduced into evidence, including an eye that had been split open, a head wound that required staples to close, and a split ear that had to be sewn back together. Moreover, J.S. had violently experienced over a course of several hours the type of physical force Lopez would use on her if she answered a question in a manner contrary to the answer Lopez wanted to hear. Finally, given the extent of the earlier violence, the on-going pain and bleeding from that violence, and J.S.'s testimony that she was too afraid to refuse, the jury reasonably could have inferred that she was in fear of imminent serious bodily injury. Accordingly, based on the totality of the circumstances, we conclude the evidence is legally sufficient to support the jury's findings.

## MOTION TO SUPPRESS

In his first issue, Lopez contends the trial court erred in denying his motion to suppress because: (1) the officers exceeded the implied license to knock on the door of his residence by

knocking continuously for five minutes; (2) the officers had no consent to search his house; and (3) he did not knowingly waive his rights when he was questioned and his statement was recorded at the police station.[1]

Officer Chad Mandry and Officer Alex King received a dispatch for a family violence disturbance. They were informed that: (1) an aggravated sexual assault had occurred; (2) J.S. was the victim; (3) Lopez was the perpetrator; and (4) a metal pipe was the weapon involved in the offense. The officers approached Lopez's house at approximately 5:50 a.m., having been informed that Lopez was at the location with a young child. The officers also had knowledge that Lopez previously had been arrested for a sexual assault of another victim and that Lopez "had threatened to use an AK against the police department in the future." Officer Mandry and Officer King approached the residence and knocked on the door. Officer Mandry stated that they knocked on the door numerous times for approximately five minutes before Lopez's mother answered the door. When Lopez's mother opened the door, the officers saw Lopez at the end of the hallway and asked him to approach the door. When Lopez got to the door, the officers "instructed him to the ground," placed him in handcuffs, and read him the *Miranda* warnings. Before the officers asked any questions, Lopez stated, "This is about my girlfriend." In response to questioning, Lopez stated that he struck J.S. a couple of times in the legs using a metal pipe. Lopez further stated that the metal pipe was in the garage. Officer King went to the garage to retrieve the metal pipe, but he could not locate it. Lopez offered to show the officers where the metal pipe was located, and the officers escorted him into the garage. Lopez gestured and told the officers that the pipe was in the corner behind some boxes. The pipe appeared to have blood on it.

---

[1] Lopez also contends that the trial court's findings of fact and conclusions of law are ambiguous and incomplete. We disagree. The trial court's findings, coupled with the complete record of the suppression hearing, provide a sufficient basis to review the trial court's rulings.

Detective Gregory Linsten interviewed Lopez at the police station. Before questioning Lopez, Detective Linsten read him the *Miranda* warnings and had Lopez sign the card containing the warnings. The card and an audio recording of the interview were admitted into evidence for purposes of the suppression hearing.

Lopez's mother also testified at the suppression hearing. She stated that she heard continuous banging on the door until she answered the door after about five minutes. The house contained an inner and outer door which each have locks. When Lopez's mother opened the inner door, she stated that the officers already had the outer door opened. She further stated that the officers pulled her outside and entered the house without her permission. The officers were calling for Lopez and then dragged him outside. The officers handcuffed Lopez and took him to the side of the house. After the officers left, Lopez's mother noticed that the officers had broken the lock on the outer door. Rafael Villarreal, Lopez's half-brother, also testified that the outer door was broken after Lopez was arrested. On rebuttal, Officer King stated that the officers did not break the door.

J.S. testified that she lived with Lopez at the time of the assault. When J.S. spoke to the officer at the hospital, she told him her address and that Lopez would be at the house. J.S. told the officer that she wanted to press charges and gave the police permission to search the house for evidence.

### A.    *Standard of Review*

"We review a trial court's denial of a motion to suppress under a bifurcated standard of review." *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). "The trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record." *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). "But when mixed questions of law and fact do not depend on the

evaluation of credibility and demeanor, we review the trial judge's ruling *de novo*." *Id.* "We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case." *Turrubiate*, 399 S.W.3d at 150.

### B. Knock and Talk

"Police officers are as free as any other citizen to knock on someone's door and ask to talk with them." *State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008). In that situation, "'the knocker on the front door is treated as an invitation or license to attempt an entry.'" *Florida v. Jardines*, 133 S.Ct. 1409, 1415 (2013) (quoting *Breard v. Alexandria*, 341 U.S. 622, 626 (1951)).

Although Lopez recognizes the officers' right to knock on the door in this case, Lopez contends that the officers exceeded the scope of this implied license by knocking on the door for five minutes. Lopez relies on the following sentence from *Jardines*, to support this contention, "This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." 133 S.Ct. at 1415.

"*Jardines* does not [however] create a new constitutional protection or fundamental right." *Fuentes-Sanchez v. State*, No. 03-12-00281-CR, 2014 WL 1572448, at *6 n.12 (Tex. App.—Austin Apr. 17, 2014, no pet.) (not designated for publication). "The *Jardines* opinion was limited to the question of whether the officers' behavior in using a drug-dog on the defendant's porch was a search within the meaning of the Fourth Amendment." *Id.*

The test for determining whether a consensual encounter becomes a search is whether "a reasonable person would feel free 'to disregard the police and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). As the Texas Court of Criminal Appeals has explained:

> Police officers may be as aggressive as the pushy Fuller-brush man at the front door, the insistent panhandler on the street, or the grimacing street-corner car-window squeegee man. All of these social interactions may involve embarrassment and inconvenience, but they do not involve official coercion. It is only when the police officer engages in conduct which a reasonable man would view as threatening or offensive even if performed by another private citizen [that] an encounter becomes a seizure. It is the display of official authority and the implication that this authority cannot be ignored, avoided, or terminated, that results in a Fourth Amendment seizure. At bottom, the issue is whether the surroundings and the words or actions of the officer and his associates communicate the message of "We Who Must Be Obeyed."

*Garcia-Cantu*, 253 S.W.3d at 243 (internal citations omitted).

In this case, the officers approached the house at a time when the residents would likely be sleeping. Under those circumstances, a reasonable person would understand that a brief knock at the door might not rouse the occupants. Although continuous knocking on the door for five minutes might be annoying, the officers made no "display of official authority" suggesting that they could not be ignored. *Id*. Accordingly, we hold the officers did not exceed the scope of a valid "knock and talk."

### C.    *Consent to Enter*

Lopez next contends the officers did not have consent to search the house. Because J.S. lived at the house with Lopez, however, she was entitled to consent to the search. *Brown v. State*, 856 S.W.2d 177, 182 (Tex. Crim. App. 1993). Lopez cites *Georgia v. Randolph*, 547 U.S. 103 (2006), as support to vitiate J.S.'s consent. In that case, however, the United States Supreme Court noted, "The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." 547 U.S. at 106. Such a warrantless search becomes unreasonable only if another co-occupant, who is physically present at the location, refuses to permit entry. *Id*.

In this case, Lopez did not refuse to permit entry. Instead, he even directed the officers to the location where the metal pole was found. Accordingly, the officers had consent to search the house.

### D.      *Recorded Statement*

Lastly, Lopez asserts he did not knowingly and voluntarily waive his rights before his statements were recorded at the police station. As the State notes, however, Lopez's recorded statement was never admitted into evidence. Therefore, even if the trial court erred in ruling the statement was admissible, the error "is irrelevant" and does not require a reversal. *Herron v. State*, 86 S.W.3d 621, 628 (Tex. Crim. App. 2002).

### MOTION FOR NEW TRIAL

In his third issue, Lopez contends the trial court erred in failing to conduct a hearing on his motion for new trial and in denying his motion. In his motion, Lopez asserted that new evidence had been discovered since trial, noting that J.S. expressed regret in her victim impact statement that Lopez received a life sentence. Lopez further asserted that he would have called J.S. to testify at the punishment hearing if he had known she would testify about her desire for Lopez to receive a lesser sentence.

### A.      *Waiver of Right to Hearing*

The State initially contends that Lopez was not entitled to a hearing because Lopez's motion requested a hearing or, in the alternative, to be allowed to present affidavits prior to the trial court's ruling. Because the record contains an order establishing that the trial court reviewed J.S.'s affidavit which Lopez submitted to the trial court, the State contends Lopez was given the relief he requested. We disagree. In the document entitled "Presentment of Affidavit in Support of Motion for New Trial," Lopez prayed for the trial court to review the affidavit, consider it in

conjunction with his motion, "and conduct an evidentiary hearing on the same." Accordingly, Lopez continually requested a hearing on his motion.

### B.      *Hearing on Motion for New Trial*

"When examining a trial court's denial of a hearing on a motion for new trial, we review for an abuse of discretion." *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). "In so doing, we reverse only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id*. (internal citations omitted).

A hearing on a motion for new trial is "not an absolute right," and "is *not* required when the matters raised in the motion for new trial are subject to being determined from the record." *Id*. at 338 (emphasis in original) (internal citations omitted). In addition, a defendant who raises matters that are not determinable from the record "is not entitled to a hearing on his motion for new trial unless he establishes the existence of reasonable grounds showing that the defendant could be entitled to relief." *Id*. at 339. Therefore, our review "is limited to the trial judge's determination of whether the defendant has raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief." *Id*. at 340. "This is because the trial judge's discretion extends only to deciding whether these two requirements are satisfied." *Id*. "If the trial judge finds that the defendant has met the criteria, he has no discretion to withhold a hearing." *Id*. "In fact, under such circumstances the trial judge abuses his discretion in failing to hold a hearing." *Id*.

With regard to the first requirement, the sole ground raised in Lopez's motion for new trial was newly discovered evidence of J.S.'s views regarding Lopez's punishment.[2] Since J.S. referred

---

[2] In his reply brief, Lopez suggests J.S. might have testified to additional facts beyond a simple punishment recommendation if Lopez had been given a hearing on his motion. Lopez suggests that J.S. would have testified about "Lopez's redeeming qualities, as well as to the probability of his future successful rehabilitation and reintegration into society after any future release." Lopez further suggests that J.S. would have testified about her complex relationship

to her views during her victim impact statement, her views are determinable from the record.[3]

Therefore, the trial court did not abuse its discretion in not holding a hearing on Lopez's motion.

With regard to the second requirement, Lopez's motion requests a new punishment hearing at which he would present J.S.'s views. "Several courts of appeals have held that a victim's testimony regarding what punishment should be assessed can properly be excluded from evidence." *Hines v. State*, 396 S.W.3d 706, 710 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Wright v. State*, 962 S.W.2d 661, 663 (Tex. App.—Fort Worth 1998, no pet.) (holding testimony was not relevant to jury's punishment determination); *Hughes v. State*, 787 S.W.2d 193, 196 (Tex. App.—Corpus Christi 1990, pet. ref'd) (same); *Gross v. State*, 730 S.W.2d 104, 105-06 (Tex. App.—Texarkana 1987, no pet.) (holding testimony was beyond scope of permissible lay opinion testimony)). In his reply brief, Lopez cites an unpublished decision from the Dallas court of appeals suggesting that the testimony of a victim's husband regarding punishment was admissible. *Narro v. State*, No. 05-98-01263-CR, 2000 WL 1030508, at *3-4 (Tex. App.—Dallas July 27, 2000, no pet.) (not designated for publication).[4] The Houston court also has noted its belief that the Texas Court of Criminal Appeals has suggested in dicta that the testimony might be admissible. *Hines*, 396 S.W.3d at 710. Given the current state of the law, the trial court did not

---

with Lopez, her diminished concern about his future dangerousness, and the competing needs of punishing him and having him available to father their child. The only ground raised in Lopez's motion, however, was newly discovered evidence in the form of J.S.'s views on the punishment assessed. Although Lopez suggests in his reply brief that J.S. might have testified about these other topics, the trial court was determining whether a hearing was required based on the motion and affidavit; therefore, we do not consider Lopez's suggestions in reviewing whether the trial court abused its discretion in denying the hearing.

[3] In her affidavit J.S. stated, "I was saddened to learn that Richard got life in prison. I personally did not want Richard to get a life sentence. The attorneys for the State did not call me to testify at Richard's sentencing, but if they had I would have asked the jury to sentence Richard to a sentence of thirty or forty years. I would have liked to see him receive a lighter sentence than life in prison because I have very complicated emotions about Richard, who is the father of my son. … While I can understand why the jury gave Richard life in prison, I would like to set the record straight and let the jury know that life in prison is not what I want for Richard."

[4] The Dallas court alternatively held that if the testimony was inadmissible, the trial court subsequently withdrew the evidence and instructed the jury not to consider the statements, and the jury is presumed to have followed the instructions. *Id*. at *4-5.

abuse its discretion in refusing to hold a hearing because Lopez did not establish the existence of reasonable grounds showing that he would be entitled to present J.S.'s testimony at a new punishment hearing.

Finally, as previously noted, the trial court signed an order stating that it had reviewed J.S.'s affidavit filed in support of Lopez's motion for new trial. "[A] trial court may rule [on a motion for new trial] based on sworn pleadings and affidavits without oral testimony; live testimony is not required." *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). Because the trial court's order reflects that the trial court reviewed J.S.'s affidavit, the trial court was not required to consider live testimony at a hearing. *See id*.

## C.    *Allowing Motion for New Trial to be Overruled by Operation of Law*

With regard to the merits of the motion, "a defendant is entitled to have his motion for new trial granted if: (1) the newly discovered evidence was unknown to him at the time of trial; (2) his failure to discover the new evidence was not due to his lack of due diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result in a new trial." *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). As previously noted, the law does not support the proposition that J.S.'s opinion on punishment would be admissible at a new punishment hearing; therefore, the trial court did not abuse its discretion in allowing Lopez's motion to be overruled by operation of law. *See Klapesky v. State*, 256 S.W.3d 442, 455 (Tex. App.—Austin 2008, pet. ref'd) (applying abuse of discretion standard where trial court allowed motion for new trial to be overruled by operation of law); *Frank v. State*, 183 S.W.3d 63, 71 (Tex. App.—Fort Worth 2005, pet. ref'd) (same).

## DOUBLE JEOPARDY

In his final issue, Lopez contends his conviction violates his double jeopardy protections because the factual basis for his prosecution in the underlying case was used as punishment evidence in an earlier trial in which he also was convicted of sexual assault of a different victim. *See Lopez v. State*, 358 S.W.3d 691, 697 (Tex. App.—San Antonio 2011, pet. ref'd). We rejected this same double jeopardy argument in affirming the earlier conviction, holding, "the admission of evidence of extraneous crimes or bad acts does not constitute a prosecution but rather shows the defendant's character, which is relevant to sentencing." *Id.*; *see also Lopez v. State*, No. 04-07-00472-CR, 2008 WL 859159, at *2 (Tex. App.—San Antonio Apr. 2, 2008, pet. ref'd) (not designated for publication) (same); *Ex parte Smith*, 884 S.W.2d 551, 553-55 (Tex. App.—Austin 1994, no pet.) (same). Having rejected this legal argument in two prior opinions, this court elects not re-visit the issue for a third time.

## CONCLUSION

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH